## In re HAIGHT'S WILL.

(Supreme Court, Appellate Division, Second Department.　May 29, 1900.)

1. WILLS—CONDITIONS—RESTRAINT OF MARRIAGE—PUBLIC POLICY.

A testator bequeathed the income of his estate, to the extent of a certain sum annually, to his son, so long as the son's wife should live, or so long as the son should be lawfully bound to her as her husband, and in case of her death, or in case he should cease to be bound to her as her husband, then the whole income of testator's estate was to be paid to the son. *Held*, that the condition of the payment of the whole income was void, as being against public policy, and the son was entitled to the whole income, though his wife be not dead or divorced from him.

2. JUDGMENTS—CONCLUSIVENESS.

A legatee under a will which bequeathed to him a certain sum from the income of the testator's estate so long as the legatee's wife should live, or so long as he should be lawfully bound to her as her husband, and which further provided that in case of her death, or in case he should cease to be lawfully bound to her as her husband, then the whole of the income from testator's estate should be paid to the legatee, is not estopped by an adjudication by the surrogate, in an intermediate accounting by the executors, to the effect that such condition of the will was valid, where such intermediate account was presented for allowance, and was passed on at a time when the whole income from the testator's estate did not equal the amount directed to be paid to the legatee though he did live with his wife.

3. EXECUTORS AND ADMINISTRATORS—COMPENSATION—ACCOUNTING.

Where testamentary trustees pay to legatees and beneficiaries under a will the income of the testator's estate as directed by the will, without deducting their commissions, they will be deemed to have waived their right to the commissions, and they cannot thereafter collect them from the principal of the estate.

4. SAME.

Where the conditions of a will, providing that only a certain sum from the testator's estate shall be paid to a legatee annually, are declared invalid, and the legatee entitled to the whole income of the estate, the testamentary trustees, who have paid to the beneficiary the amount directed to be paid to him without deducting commissions, are entitled to deduct their commissions from funds retained in their hands for such years as the income of the estate exceeded the amount paid to the beneficiary, but which he was entitled to receive, so far as such excess is sufficient, but for those years when the amount paid to the beneficiaries consumed all of the income of the estate they are not entitled to any commissions, not having deducted them.

Appeal from surrogate's court, Orange county.

Application by Edward Haight and others for settlement and allowance of their final account as trustees under the will of Augustus Holly Haight, and for a judicial settlement of an intermediate account of Edward Haight, as trustee. From an order of the surrogate denying a motion to amend a decree, and to require the trustee to pay over to Benjamin Haight all the income of the estate, and from a decree overruling objections made by Benjamin Haight to the intermediate accounting and settlement of the accounts of the trustee, Benjamin Haight appeals. Appeal from order dismissed. Decree reversed.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

William R. Wilder, for appellant.

G. D. B. Hasbrouck, for respondent Edward Haight.

Henry Bacon, for respondent Joseph Merritt.

HIRSCHBERG, J. Augustus Holly Haight died on the 10th day of April, 1879, leaving a will and codicil, which were admitted to probate in Orange county on the 8th day of May following. He named Louis Haight, Edward Haight, and James G. Roe executors and trustees, and letters testamentary were duly issued to them. They thereafter filed an account in the surrogate's court, and a decree was rendered on such accounting on the 10th day of November, 1880. Louis Haight died in 1894, and James G. Roe in 1896, and Edward Haight has since acted as sole trustee. He has presented an intermediate account of his proceedings, and the same has been settled by the surrogate of Orange county in a decree dated January 23, 1899. The testator left no widow, and but one child, Benjamin Haight, and these appeals are taken by Benjamin from the last decree, and from an order denying his motion to amend and modify the first decree, in so far as it limited his right to the income of the estate to the sum of $2,000 per annum, and to require the payment to him of all of said income.

Among other bequests, the testator gives to his executors the sum of $8,000 in trust for his sister Sarah J. Smith during life, and the sum of $8,000 in trust for Maria Crassous during life, the principal in each instance to revert to the residue of the estate on the death of the beneficiary. The will contains this provision for the testator's son:

"All the rest, residue, and remainder of my estate, both real and personal, I give, devise, and bequeath to my executors, hereinafter named, in trust, however, and to and for the following uses and purposes, namely: To invest the same, and to keep the same invested, and to pay the income therefrom to my son, Benjamin Haight, for and during the term of his natural life; but it is my will that so long as the present wife of my said son shall be living, and he shall be lawfully bound to her as a husband, the income to be paid to my said son shall not exceed the sum of two thousand dollars in any one year; and that in case of the death of said wife, or in case of his ceasing to be bound to her as a lawful husband, then the whole of said income is to be paid over to my said son during his natural life."

No disposition is made by the will of the annual income which shall be in excess of $2,000 during the life of Benjamin Haight's wife and the continuance of their marriage relations; but, on the death of the son leaving a child or children surviving, the executors are directed to apply the income to the maintenance, support, and education of such child or children during minority, and to pay over the principal equally to each child on the attainment of its majority; and, should the son die without leaving a child surviving and attaining the age of 21 years, then the estate is to be paid in equal shares to the children of the testator's brother and sister. Benjamin Haight married on the 21st day of August, 1877, and the will was made two days afterwards. At the time of the first settlement, and for several years afterwards, the income of the residue did not amount to $2,000 a year; but during a few years past it has been

slightly in excess of that sum, and the excess is expected to increase in consequence of the termination of the trusts for the benefit of the testator's sister and of Maria Crassous. The former died July 2, 1891, and the latter January 16, 1899, having each received the income of the respective trusts in full, without any deduction for commissions. By the decree of November 10, 1880, the executors and trustees were directed to pay the income arising from the residue of the estate, less commissions, to Benjamin Haight, to the amount of $2,000 per year, in the words of the decree, "as long as the present wife of the said Benjamin Haight shall live, or as long as the said Benjamin Haight shall be lawfully bound to her as a husband"; and "in case of the death of the said wife, or in case said Benjamin Haight shall cease to be bound to her as a husband, then said executors are hereby ordered and directed to pay over to said Benjamin Haight the whole of the interest and income arising from said rest and residue for and during the term of his natural life." Benjamin Haight was a party to the proceedings on the first accounting, was then of full age, and no appeal was ever taken from the decree.

The appellant insists that the provision of his father's will which makes his enjoyment of the whole of the income dependent on the termination of his marriage relations is void, as in contravention of good morals and public policy, and that he may now raise the question, notwithstanding the decree of November 10, 1880. I have concluded that he is correct on both points.

As to the first point, the condition must be held void if its manifest object was to induce Benjamin Haight to take such steps as might be necessary in order that he should cease to be lawfully bound to his wife as a husband; in other words, to obtain, or provoke, and so occasion, a legal divorce or separation, either in this state or in some other jurisdiction. If any other and innocent construction can be placed upon the condition, it is, of course, to be adopted. But the will was made directly after the marriage of testator's son, and the condition must be regarded as made in hostility to that union, and in the hope of destroying it, in so far as that object could be accomplished by offering money by way of a premium or reward. It is true the condition is not in so many words that the son shall procure or suffer a divorce in order to entitle him to the entire income; but the precise effect of such an express condition is produced by a provision which gives him the entire income when such a divorce is procured or suffered. If the former offends public morals and contravenes public policy, it is difficult to see why the latter does not also. "It is a general principle, well settled," said Mr. Justice Ingraham in Wright v. Mayer, 47 App. Div. 604, 606, 62 N. Y. Supp. 610, "that conditions annexed to a gift the tendency of which is to induce the husband and wife to live separate, or to be divorced, are, upon grounds of public policy and public morals, void." In Wilkinson v. Wilkinson, L. R. 12 Eq. 604, the testatrix gave the residue of her property to her niece, with a direction that all interest should pass under the will as upon the death of the niece, should she not cease to reside in Skipton within 18 months of testatrix's death. The husband of the niece resided at Skipton, and the court considered

the provision to be a manifest attempt to induce the legatee to leave her husband, the vice chancellor saying (page 608): "The condition is a vicious one; and, that being so, I have no difficulty in declaring that it is void." In Brown v. Peck, 1 Eden, 140, the testator provided that, if his niece lived with her husband, she should receive two pounds per month from the estate; but, if she lived from him and with her mother, the executors should allow her five pounds per month. The legacy, at five pounds per month, was held to be good, devested of the condition, the latter being void as contra bonos mores. In Tennant v. Braie, Toth. 77, the same disposition was made of a bequest to a daughter conditioned "if she would be divorced from her husband." In Conrad v. Long, 33 Mich. 78, a condition annexed to a devise was held void which was to take effect when the devisee "should conclude not to live with her present husband." In Whiton v. Harmon, 54 Hun, 552, 8 N. Y. Supp. 119, a like provision was held void; the devise being to a son "for and during the term of his natural life, or while he shall live separately from his present wife." See, also, Potter v. McAlpine, 3 Dem. Sur. 108, cited in Whiton v. Harmon, 54 Hun, 555, 8 N. Y. Supp. 120. In O'Brien v. Barkley, 78 Hun, 609, fully reported in 28 N. Y. Supp. 1049, the authorities on the subject are collated in a very elaborate and able opinion by Mr. Justice Kellogg. In that case a trust created for testator's daughter for life, "provided, however, and on the express condition, that she do not, at any time after my decease, associate, cohabit, or live" with her husband, was declared to be wholly void, as having no other object than to effectuate testator's design to separate the husband and wife, and the daughter, therefore, took the life estate discharged of the void condition.

In the light of these decisions, and the many cases of similar import cited in the opinion, and in view of the mischief apprehended, I can but conclude that there is no difference in spirit and principle between a gift made expressly dependent upon the procurement of a divorce and one which is made payable only in the event of a divorce. The one invites the divorce directly and in terms, while the other incites it by the offer of a premium. The end desired by the donor is the same, viz. to induce the separation or divorce, and the means employed must be regarded as objectionable, whatever form or language may be employed, so long as it is apparent that the sole object of the donor is to encourage that result, and the means employed are calculated to promote it.

I have found no cases to the contrary of the principle stated, but in Born v. Horstmann, 80 Cal. 452, 22 Pac. 169, 338, 5 L. R. A. 577, and in Thayer v. Spear, 58 Vt. 327, 2 Atl. 161, provisions similar to the one under consideration were held valid where made for the benefit of a wife, to meet the deprivation of support incident to widowhood, or to the legal termination of her marital relations. In each case increased financial provision was made by will for a daughter in the event of her becoming a widow or otherwise becoming lawfully separated from her husband. The courts found the intention to be in each case only to provide for the daughter in case she were deprived of her husband's support, and made dependent upon

her own resources, whether by his death or as the result of a lawful divorce or separation. The manifest object of the provision was not to induce or invite a divorce or separation, but to provide for the widow or the divorced wife, as the case might be, in the event of the happening of either calamity. In the California case the court said (page 459, 80 Cal., and page 339, 22 Pac.):

"Not only may there be a good and sufficient reason * * * for providing that the legatee shall not have the bulk of the property until she is deprived of the support of a husband, but there may be the best of reasons for placing the same in such condition that she cannot be improperly induced by a worthless or profligate husband to squander it while she continues to be his wife, and, it may be, under his influence and control. We think such a condition in a will is not only valid, but that, under certain circumstances, it may be just and commendable."

In the Vermont case the court said (page 329, 58 Vt., and page 162, 2 Atl.):

"The first object is to ascertain, if possible, what the intention of the testatrix was; and we find no difficulty in reaching the conclusion that it was to have her estate disposed of just as it has been by the probate court. It was a wise and prudent provision to make for her daughter. While she should remain a wife, her husband would be under obligation to support her, and hence the income only was absolutely left her during the continuance of that relation; but when she should cease to be a wife, and so become dependent upon her own resources, it was just and wise to provide that she should have the entire estate."

Neither the reasoning nor the legal attitude of the parties concerned towards each other renders these cases controlling or influential in this instance. The increased provision is made in the case at bar to take effect at a time when the pecuniary obligations of the beneficiary are lessened, and the duty of support which the husband owes the wife has no reciprocal existence. The cases cited are analogous to Cooper v. Remsen, 5 Johns. Ch. 459, where a legacy was upheld which was designed to provide for the testator's daughter during the continuance of a separation from her husband actually existing at the time of the execution of the will.

If the condition is void, it follows that Benjamin Haight is entitled to the entire income. This is so whether the condition be regarded as precedent or subsequent. The whole estate appears to be invested in personal securities. A subsequent void condition could not, of course, destroy an estate already vested. Assuming, however, that the condition is precedent in its character, and would therefore work a forfeiture of the gift, in excess of $2,000 annually, at the common law, yet in equity and under the civil law, though the condition is void, the gift is good. "With respect to legacies out of personal estate, the civil law, which in this respect has been adopted by courts of equity, differs in some respects from the common law in its treatment of conditions precedent; the rule of the civil law being that where a condition precedent is originally impossible, * * * or is illegal, as involving malum prohibitum, the bequest is absolute, just as if the condition had been subsequent." 2 Jarm. Wills (6th Am. Ed.) 15. See, also, 2 Williams, Ex'rs (7th Am. Ed.) 571. "When the illegality of the condition does not concern anything malum in se,

but is merely against a rule or the policy of law, the condition only is void, and the bequest single and good." 1 Rop. Leg. 757.

As to the second point, I do not regard the decree of 1880 as constituting a binding adjudication against the appellant. On the question now before the court, there was not, and could not have been, any adjudication at all. The proceeding was an accounting by the executors, and the duty of the surrogate was confined to a judicial determination and settlement of the accounts and the decreeing of distribution. Incidentally, of course, he could construe the will in so far as might be necessary in order to direct distribution. In re Perkins, 75 Hun, 129, 26 N. Y. Supp. 958, affirmed, on opinion below, 145 N. Y. 599, 40 N. E. 165. But, as the income at the time of the first accounting was less than $2,000 per annum, there was no question before the surrogate as to the legality of the condition now under consideration. Such question could not arise until the annual income should exceed $2,000, and while the surrogate on an accounting would then have jurisdiction to determine the legality of the condition in order to direct the distribution of the fund then in hand, and a decree made by him would be binding, until reversed, upon all the parties before the court, yet even in that case it is doubtful whether his determination would be conclusive upon a subsequent accounting. In re Hoyt, 160 N. Y. 607, 55 N. E. 282. The decree controls the disposition only of the specific fund distributed under it, and even the principles under which the distribution was directed, and the construction then given to the will, would appear to be binding only as to the amounts involved at the time. But, however that may be, it is unquestionable that there was no occasion for the surrogate in 1880 to direct the distribution of income in excess of $2,000 per annum, which income did not then exist, and might never exist. As a result, nothing contained in the decree then made is binding upon the surrogate as to the question of the distribution of the surplus income, now presented for the first time. In re McCahill, 29 Misc. Rep. 450, 61 N. Y. Supp. 1071; Johnson v. Lawrence, 95 N. Y. 154, 156; In re Walker, 136 N. Y. 20, 29, 32 N. E. 633; Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067; Washbon v. Cope, 144 N. Y. 287, 39 N. E. 388. The power of the present surrogate to amend the decree of his predecessor in this particular is, however, doubtful, and, as the relief which the appellant seeks may be obtained in the proceedings for an accounting, the appeal from the order may be dismissed, without costs, excepting to the special guardian.

The remaining questions relate to the commissions and allowances. The trustee has not only paid to Benjamin Haight the income payable to him under the terms of the decree of November 10, 1880, without deducting commissions, but has paid all the income arising from the investments made for the benefit of Sarah J. Smith and Maria Crassous, respectively, to the beneficiaries, respectively, without deducting commissions. By making these payments in that manner, 'the right to the commissions has been waived, and the commissions cannot now be collected or retained, and certainly not from the principal funds of the estate. Hancox v. Meeker, 95 N. Y. 528; In re Harper, 27 Misc. Rep. 471, 59 N. Y. Supp. 371; Spencer v. Spencer,

38 App. Div. 403, 56 N. Y. Supp. 460. The commissions must be computed on the theory that the trustee is not entitled to any in the two trusts, nor to any as against the appellant, excepting during the years that surplus income payable to him under this decision has been retained, and in that case only to the extent that such surplus income in each year will pay the same.

As to the allowances other than to the special guardian, the provisions of sections 2561 and 2562 of the Code of Civil Procedure must control. The surrogate should fix the costs and disbursements of the trustee in accordance with the requirements of these sections. See In re Welling's Estate (Sup.) 64 N. Y. Supp. 1025.

The management of the estate has been admirable and beneficial. The trustee has followed the adjudication in the surrogate's court, and has lost commissions by reason of a technical rule and a liberality by which the appellant has benefited. There is no injustice, therefore, in directing that the matter of the accounting should be remitted to the surrogate for resettlement in accordance with this opinion, with costs and disbursements of this appeal to all parties payable from the fund.

The appeal from the order will be dismissed, with costs and disbursements to the special guardian; and the appeal from the decree remitted to the surrogate's court of Orange county for disposition in accordance with this opinion, with costs and disbursements to all parties payable out of the estate. All concur.