In the Matter of the Judicial Settlement of the Account of ELMER E. KELLEY, as Executor, etc., of WILLIAM B. HUGHES, Deceased.

CLIFTON O. HUGHES, Appellant; MARTHA DAVIS CONLAN, Respondent.*

Fourth Department, December 18, 1928.

* Affd., 251 N. Y. ——.

*Charles E. Congdon,* for the appellant.

*Henry P. Nevins,* for the respondent.

EDGCOMB, J.  It is sought in .this proceeding to construe the last will and testament of William B. Hughes, deceased.

After giving to Martha Davis Conlan the life use of all his property, with power to invade the principal, the will provides as follows:

"*Fifth.* If said Martha Davis Conlan should go back to live with her husband, Terrance Conlan, from whom she is now separated, she is not to receive any of my property or estate, but the same shall belong to the children of my said nephew Guy Clifton Hughes of Pittsburgh, Penn., share and share alike."

Prior to decedent's death, Mrs. Conlan returned to her husband, from whom she was separated at the time the will was executed. She has continued to live with him ever since.

The surrogate held that the clause above quoted was void because it was contrary to public policy, and that Mrs. Conlan took the life use of decedent's property, with power to invade the principal without limitation or restriction, discharged of all limitations and conditions.

The fundamental aim of the court in interpreting a will is to ascertain the intent of the testator.  When that purpose has been made sure of, it must control, unless it is contrary to public policy or to some established rule of law.  (*Close* v. *Farmers' L. & T. Co.,* 195 N. Y. 92, 100; *Lasher* v. *Lasher,* 13 Barb. 106.)

The design of the testator that Mrs. Conlan should inherit his estate only in the event that she continued to live separate and apart from her husband is apparent from the language of the will.  No other conclusion can be drawn.  It is not for the court to question the wisdom of decedent in thus limiting his bequest.  Whether the disposition which he attempted to make of his property was wise or unwise, reasonable or unreasonable, just or unjust, is not a subject for discussion here.  One has a right to give his property

to whomsoever he may choose, provided his disposition violates no principles of law or morality.

The language of the will being clear and unambiguous, and the intent of the testator being definite and certain, the only question to be determined is whether the clause in question is obnoxious to public policy.

Concededly, one cannot lawfully do that which has a tendency to be injurious to the public good. A contract which binds one of the parties to do that which is contrary to the policy of the State or nation is void, no matter how solemnly it may have been made. So a testamentary disposition designed to carry into effect some purpose which the law regards as immoral, illegal or impolitic, will be held void.

Our modern society is built about the home. Its perpetuation is essential to the welfare of the community. The law looks with disfavor upon any contract by which a husband and wife agree to separate and live apart from each other in the future, because such an agreement breaks up the home, and tends to dissolve or alter the marriage relation. An agreement between a husband and his wife, which has for its object their future separation, is of no legal force or effect. (Dom. Rel. Law, § 51; *Winter* v. *Winter*, 191 N. Y. 462; *Kaufman* v. *Kaufman*, 158 App. Div. 892.)

On the other hand, when the parties have actually separated and are no longer cohabiting together, such a contract is not deemed violative of public policy. (*Winter* v. *Winter*, 191 N. Y. 462; *Duryea* v. *Bliven*, 122 id. 567; *Clark* v. *Fosdick*, 118 id. 7; *Galusha* v. *Galusha*, 116 id. 635; *Tallinger* v. *Mandeville*, 113 id. 427; *Pettit* v. *Pettit*, 107 id. 677.)

The same reasoning which permits a married couple, who are living separate and apart from each other, to prolong such relation, would seem to sustain a bequest to a wife contingent upon her continuing to live isolated from her husband, when that was their mode of living at the time the will was made.

If this were a gift to the beneficiary, contingent upon her deserting her husband and breaking up a home which then existed, an entirely different situation would arise.

There is no evidence here that Mrs. Conlan knew of the existence of this will or its contents prior to the death of testator. If that is so, its provisions could have had no controlling effect upon her relations with her husband during the life of decedent.

Assuming that the purpose of the bequest was to make a reconciliation between Mr. and Mrs. Conlan impossible, that design utterly failed, because they went back living together again before the decedent died, and that condition of affairs still exists. So

that the actual effect of the bequest was in no way violative of the policy of the State.

The record is practically barren of evidence concerning the relations of the various parties, or of facts which throw any light on the intention of the testator. Declarations of decedent were admitted, which, it was claimed, bore on such intent. The surrogate finally struck out such evidence, and this testimony must, therefore, be disregarded. No appeal was taken by Mrs. Conlan, so she cannot complain of that ruling, even if it was erroneous. However, I think that the ruling was right. (*Matter of Keleman*, 126 N. Y. 73, 78; *Williams* v. *Freeman*, 83 id. 561; *Mann* v. *Mann*, 14 Johns. 1.)

We must, therefore, spell out the testator's intent from the instrument itself. I do not think that it can properly be said that the only design which decedent had in attaching this rather peculiar condition to his bequest was in the furtherance of an unlawful purpose on his part to keep Mrs. Conlan and her husband apart. To my mind, it is just as logical to conclude that the testator wanted to provide for the beneficiary of his bounty only in event that she continued to live alone and was deprived of the benefit, and, so far as the record shows, support of the wage earner of the family, in which case she would naturally need help; that if the two went back living together and Conlan furnished and maintained a home for his wife, and she was properly taken care of and did not need outside assistance, decedent preferred that his property should go to his own flesh and blood. An inference that one is moved by an improper or unlawful motive should never be drawn when a legitimate purpose is just as apparent.

*Cooper* v. *Remsen* (5 Johns. Ch. 459) and *Wright* v. *Mayer* (47 App. Div. 604) seem to me to be ample authority for upholding this clause of the will.

*Cooper* v. *Remsen* came before the court on three different occasions, once in 3 Johnson's Chancery, 382, again in the same volume at page 521, and the third time in 5 Johnson's Chancery, 459. Testator bequeathed $1,000 a year to his daughter, during her separation from her husband. When the will was made, the daughter and her husband were living apart. They had gone back living together when decedent died. After his death they again separated. With the exception of this last event, the facts in the two cases are almost identical. It was held that the condition attached to the bequest was valid, and that the daughter was not entitled to the legacy. The chancellor says (at p. 461): " The court cannot make a will for the testator, but it is bound to support the will as it is made, if the condition is not void by being impossible,

or *contra bonos mores*. There is a wide difference between a bequest to a daughter during her separation from her husband, when the separation was then actually existing, without being procured by the testator, and a legacy to her, if she lived apart from her husband; for that would be to hold out a temptation to a separation, which would be *contra bonos mores*. The legacy would be simple and pure in the latter case, according to the decision of Lord NORTHINGTON, in *Brown* v. *Peck* (1 Eden, 140); but in the former case, the legacy depends upon the fact of separation then already commenced, and was, in that event, a kind and charitable provision."

In *Wright* v. *Mayer* (*supra*) the testatrix gave to her daughter, who at the time of the execution of the will and the subsequent death of her mother was separated from her husband, certain real property, provided that she did not resume her marital relations with her spouse. It was held that the condition which attached to this bequest was not invalid, because it could not be said to put a premium on the separation of the parties.

*Matter of Haight* (51 App. Div. 310); *Whiton* v. *Snyder* (54 Hun, 552) and *O'Brien* v. *Barkley* (60 N. Y. St. Repr. 520) are not controlling here.

In the *Haight* case there was an obvious inducement for the legatee to resort to divorce and terminate the legal relation of husband and wife.

In the *O'Brien* case the outcome of the provision which was held void depended on the conduct of the legatee after testator's death.

In the *Whiton* case the estate vested in her son on the death of the testatrix, but became divested, due to subsequent events, if the condition imposed in the will was upheld. The law is always reluctant to bring about such an event.

Here, the estate never vested in Mrs. Conlan, as the very condition which the testator decreed would bar her from her legacy existed at his death, and has continued to exist. It is not the case of a condition arising subsequent to the death of testator, the breach of which would subject the estate to divestiture.

I think that the decree, so far as it is appealed from, should be reversed, with costs to appellant.

All concur. Present — CLARK, SEARS, TAYLOR, SAWYER and EDGCOMB, JJ.

Decree, so far as appealed from, reversed on the law, with costs against respondent, and matter remitted to the Surrogate's Court with directions to enter a decree in accordance with the opinion.