In the Matter of the Estate of VICTOR H. CARPLES, Deceased.

Surrogate's Court, New York County, April 25, 1931.

*Olvany, Eisner & Donnelly* [*Mark Eisner* of counsel], for the executors.

*Philip W. Lowry,* for the petitioner.

*Louis A. Cuvillier,* special guardian.

O'BRIEN, S. Questions of construction have been raised concerning testator's will and particularly as to paragraphs eighth, ninth, tenth, eleventh and twelfth. These paragraphs read as follows:

"*Eighth.* All the rest, residue and remainder of my estate, whether real, personal or mixed, and wheresoever situated, I give, devise and bequeath to my executors and trustees hereinafter named, in trust, nevertheless, for the uses and purposes following:

"To enter into and upon and take possession of the same; to hold, invest, reinvest and keep invested the same; to collect the rents, interest, income, issues and profits thereof, and to apply the same during the lives of my wife, Esther K. Carples, and of my daughter, Anne Barbara Carples in the manner, however, hereinafter provided.

"(1) I direct my trustees hereinafter named to reserve, pay and apply to the use of my daughter, Anne Barbara Carples the sum of Twelve Hundred ($1,200.00) Dollars per annum.

"(2) In addition to the foregoing, I direct my trustees hereinafter named, to reserve, pay and apply out of the income of my estate, the sum of $1,300 per annum, out of which sum they shall

defray the reasonable, proper and necessary expenses for tuition and incidental disbursements arising through the attendance of my daughter, Anne Barbara Carples, at such private schools, summer camps, colleges and/or professional schools, as they, my said trustees, shall from time to time, select, until my said daughter shall arrive at the age of twenty-one years, and any balance of such sum so reserved and remaining unexpended shall be accumulated for my daughter's benefit, and applied to defraying any deficiency for any year over the amount of $1,300.00 and any balance remaining on hand when she shall arrive at the age of twenty-one shall be paid over to her together with any other accumulations.

" Anything to the contrary notwithstanding, however, if my said daughter shall either herself willfully, or pursuant to the direction or persuasion of any guardian or custodian fail to attend such private schools, summer camps, colleges and/or professional schools selected or approved by my said trustees, then and in that event, I direct my trustees to pay and apply at the end of each year, the whole or any part of the sum of $1,300 not expended for the purposes and under the conditions hereinabove set forth, to the American Civil Liberties Union, or if that organization be not in existence, to such other organization, the objects and purposes of which most nearly approach those of the present American Civil Liberties Union, leaving the selection of such organization to the discretion of my trustees.

"(3) Of the remaining income of my estate, if any, not applied to the purposes hereinabove specified in subdivisions (1) and (2) hereof, and subject to the payment of said provisions in full in accordance with their requirements, I direct my executors and trustees to reserve, pay and apply to the use of my sister, Selma Carples, annually for the duration of the trust, a sum equal to two-thirds of the said remaining income, not exceeding, however, the sum of Twenty-four hundred ($2,400.00) Dollars per annum, and I further direct my executors and trustees to reserve, pay and apply to the use of my daughter, Anne Barbara Carples the total remaining net income of my estate.

"(4) In the event of the death of Anne Barbara Carples leaving issue her surviving, so much of the income herein allotted and theretofore payable to her under subdivisions (1), (2) and (3) hereof as shall be required, if any, to bring the total income of Selma Carples derivable under this will up to the sum total of Twenty-four hundred ($2,400.00) Dollars per annum, shall thereupon be paid to Selma Carples and the remainder of the income theretofore payable to Anne Barbara Carples, if any, shall be

payable to the issue of my said daughter, and if there be more than one such issue, then in equal parts to each of them.

"(5) In the event of the death of Anne Barbara Carples without issue or in the event of the death of Anne Barbara Carples and all issue of Anne Barbara Carples leaving in either event Selma Carples her or them surviving, I direct that the entire income of my said estate shall be paid to Selma Carples for the balance of the duration of the trust.

"(6) In the event of the death of my sister Selma Carples and for the remaining duration of said trust, I direct that the income otherwise payable hereunder to my said sister had she survived, shall be paid to my brother Arthur Carples.

"(7) Anything hereinbefore to the contrary notwithstanding, I direct that upon the death of my sister Selma Carples and of my daughter Anne Barbara Carples without issue, or upon the death of any or all issue her surviving, the trust hereinbefore created shall be terminated and the remaining corpus of my estate shall be paid and distributed to the legatees named in accordance with the provisions hereinafter in paragraph marked or numbered twelfth of this will contained.

" *Ninth.* It is my wish that all payments of income hereinbefore provided shall be paid in such installments and in such manner as my executors and trustees shall in their discretion deem advisable and expedient and it is my wish that the income payable to my daughter or to her issue shall be paid, except as herein otherwise expressly provided, to such persons or institutions for her use or to her directly only in such installments, amounts and proportions as my executors and trustees shall in their discretion and judgment as to her best interests deem expedient, advisable and necessary for her specific maintenance and education. I expressly authorize my executors and trustees to suspend payment of and to accumulate such portions of said income as they shall deem advisable in the interests of my said daughter or her issue, and I further direct that any unpaid portion of the income herein provided for her use or for the use of her issue, thus accumulated, shall be paid to her or her issue as the case may be, upon arriving at their majority.

" *Tenth.* In the event of the death of my sister Selma Carples and of my brother Arthur Carples and the survivorship of my said daughter, I direct that all income heretofore applied to the use of my said brother or of my sister shall thereupon be applied to the use of my said daughter.

" *Eleventh.* In the event of and upon the death of Esther K. Carples and of my sister Selma Carples and also of my brother

Arthur L. Carples, I direct my trustees to pay to my said daughter Anne Barbara Carples when she shall arrive at the age of twenty-three (23) years a sum equivalent to one-third of the corpus of my entire estate, and in the foregoing event and when she shall have arrived at the age of twenty-seven (27) years, I direct them to pay to her a sum equivalent to one-half of the remaining corpus of my trust estate, and in the foregoing event, and when she shall have arrived at the age of thirty (30) years, I direct them to pay her the remainder of the entire corpus of my trust estate, and direct that the trust or trusts as to the portion or portions of said corpus so paid shall thereupon cease and determine.

" *Twelfth.* Upon the termination of the trust hereinbefore created, I give, devise and bequeath all the rest, residue and remainder of the corpus of my estate, whether real, personal or mixed, not theretofore distributed and not herein otherwise expressly bequeathed and devised, to such of the persons hereinafter named as shall then be living, in such shares and proportions as each of the numbers set opposite their respective names shall bear to the sum total of all said numbers, to wit:

| | | |
|---|---|---|
| " To my niece Janet Carples, if living | Four | (4) |
| " To my nephew Irving Carples, if living | Two | (2) |
| " To my nephew Charles Carples, if living | Four | (4) |
| " To my brother Arthur Carples, if living | Ten | (10) |
| " To my sister Selma Carples, if living | Thirty | (30) |
| " To the issue of my daughter Anne Barbara Carples, in equal parts | Thirty | (30)." |

The questions are raised by the widow, for whom no provision was made in the will, and the special guardian of the minor, a daughter and only child of testator, concurred in the widow's construction of the will.

I hold (1) that the trust or trusts which testator attempts to create in paragraphs 8, 11 and 12 are invalid and void because it or they — if we take the provisions as attempting in three separate instances to set up trusts different from and inconsistent with each other — violate the provisions of section 11 of the Personal Property Law and section 42 of the Real Property Law in that there is in said provisions a suspension of the absolute power of alienation for a period longer than two lives in being at the time of testator's death; (2) that subdivision 2 of paragraph 8 is void for the additional reason that it *contains an invalid in terrorem* clause; (3) that paragraph 9 is also void in so far as it authorizes accumulations which are contrary to subdivisions 1 and 2 of section 16 of the Personal Property Law and subdivisions 1 and 2 of section 61 of the Real Property Law. *The first conclusion* is inevitable

for testator (a) provides in the opening sentence of paragraph 8 that the first *trust therein referred to shall continue during the lives of his wife, Esther K. Carples, and his daughter, Anne Barbara Carples;* (b) *provides in subdivision 7 of said paragraph for the measuring of the trust by the lives of his sister Selma, his daughter Anne Barbara and the lives of the issue of the latter;* and (c) *provides in paragraph 11 for the measuring of the trust by the lives of Esther K., his wife, Selma, his sister, and Arthur L., his brother.* The executors argue that while this paragraph decrees that upon the death of testator's sister and the death of his daughter without issue or the death of all of the daughter's surviving issue, the trust shall terminate, all of this language (1) is subject to the provision in the opening paragraph of paragraph 7 which sets forth the lives of testator's wife and daughter as the measure of the time of the duration of the trust; and (2) that the provisions in subdivision 7 of paragraph 8 simply accelerate the falling in of the remainders so that the trust may be terminated when testator's principal beneficiaries die. They cite certain cases where provision was made for terminating a trust at a time earlier than the end of the life of the survivor of two persons whose lives were taken for the measurement of the term of the trust. Their argument at first blush is alluring but it fails when the acid test is applied. Argue as they may, the executors cannot escape from the fact that under subdivision 7 the trust *cannot terminate until (1) Selma has died; (2) Anne Barbara has died without issue, and (3) until any and all of Anne Barbara's surviving issue shall have died.* The language used is positive. It means clearly and plainly what it asserts. Moreover it is made more definite by the use of the words at the beginning of said subdivision 7: "*Anything hereinbefore to the contrary notwithstanding,*" by which words testator supersedes the measurement of two lives previously set forth. There is no suggestion that the provision as to the lives of Selma, Anne Barbara and the latter's issue shall not be effective if the widow, Esther K., and the daughter, Anne Barbara, have died. The thought back of their argument is that under some possible contingency *within the two lives adopted in the first instance (Esther's and Anne Barbara's)* Selma and Anne Barbara and Anne Barbara's surviving issue may all die and thus terminate the trust within said two lives, and they say nothing about other contingencies possible under the language which testator has used. To illustrate, Selma may survive both the widow and the daughter and Anne Barbara's issue may survive the widow and daughter and the trust will not be terminated till all have died. At this point it is interesting to note on page 11 of executor's brief the following statement: " Obviously the intro-

ductory provisions of paragraph eighth and subdivision 7 of said paragraph should be together construed to provide that the trust shall terminate *at the death of the testator's widow Esther, and that of his daughter Anne Barbara, or the deaths of all the following: his sister, Selma, and his daughter, Anne Barbara without issue, or of any or all issue her surviving.*"

Paragraph 11 adds to the complications presented in the trust provisions. The same reasoning which we have applied to subdivision 7 of paragraph 8 may be directed to this paragraph. In clear, unequivocal and positive language, with no condition, limitation or modification, it provides: "*upon the death of Esther K. Carples and of my sister Selma Carples and also* upon the death of my brother Arthur L. Carples, I direct my trustees to pay to my said daughter Anne Barbara when she shall arrive," etc. This is an independent and separate provision and by no rule of statutory interpretation of which we are aware is it subject to the provision in paragraph 8 as to the two lives of Esther K and Anne Barbara. It extends a trust over three lives and in addition for certain portions of Anne Barbara's life and is void. The trust sought to be created is further complicated by paragraph 12 which provides for a further distribution of the rest, residue and remainder of the estate "upon the termination of the trust hereinbefore created." This paragraph has a direct bearing upon the distribution provided for in subdivision 7 of paragraph 8, viz., after the death of Selma and Anne Barbara and the latter's surviving issue. Said paragraph 12, for purposes of distribution among the parties named, assumes the whole remainder to be made up of eighty units and sets down a certain number of units for each of the persons named "if living," and to the issue of Anne Barbara in equal shares. If any one of the persons named or of the class described does not survive the falling in of the remainder, *intestacy as to such persons results.* It will be noted that the widow is cut off absolutely from any share in the estate and that the only provision in the will which will permit Anne Barbara to share in the corpus is in paragraph 11. Moreover, the terminology of this latter paragraph presents several other serious questions. In the sixth line testator refers to " a sum equivalent to one-third of *the corpus of my entire estate.*" What does this expression italicized mean? Executors assert that it is synonymous with the expression " *trust estate* " and call attention to the fact that in the ninth line the expression " one-half the *remaining corpus of my trust estate* " is used and also that in the twelfth line the expression " remainder of the entire corpus of my trust estate " is used. Yet in the last two lines still another

expression is used, " and direct that the *trust or trusts as to the portion or portions of said corpus* so paid shall thereupon cease and determine." The situation presented so far as the trust or trusts are concerned is not one wherein a surgical construction is appropriate (*Matter of Shapiro*, 134 Misc. 363; affd., 229 App. Div. 867), for here we have plain, simple and certain language and an absence of any ambiguity and again there is no manifest and definite disposition, plan or purpose on the part of the testator so far as the residue and remainder are concerned except the withholding of any part of it from his widow. To illustrate this absence of a definite intention, consider the remainder so far as it affects his sister, Selma. Testator leaves her, if living, in paragraph 12, thirty out of eighty units, yet in two paragraphs expressly providing for a falling in of the remainders, viz., 8, subdivision 7, and 11, Selma's death is essential to the termination of the trust and the falling in of the remainder. Again paragraph 11 is the only part of the will which gives a part of the remainder to his daughter, yet the widow, the sister and the brother of testator must die before the daughter may possess any part of the remainder. Moreover, subdivision 7, paragraph 8, directs the termination of the trust after the deaths therein mentioned and distribution as prescribed in paragraph 12, and in the latter paragraph thirty units are set down for the issue of testator's daughter in the face of the fact that the death of all of said issue before the termination of the trust is required under said subdivision 7, paragraph 8. On the other hand, said issue of the daughter might share in the remainder if said daughter survives testator's wife, brother and sister and dies before reaching twenty-three, twenty-seven or thirty years. This absence of a well-defined intention upon the testator's part is further shown by a study of the provisions of the will concerning distribution of the remainder so far as testator's brother and his niece and nephews are concerned. *The provisions of the will which purport to create a trust or trusts are void.* In these provisions are included all of the subdivisions of paragraph 8 which relate to distribution of income. (*Schettler* v. *Smith*, 41 N. Y. 328; *Matter of Wilcox*, 194 id. 288, 294; *Brown* v. *Quintard*, 177 id. 75; *Herzog* v. *Title Guarantee & Trust Co.*, Id. 86; *Matter of Hitchcock*, 222 id. 57; *Knox* v. *Jones*, 47 id. 389, 393; *Matter of Bruchaeser*, 49 Misc. 194, 197, 198.)

For additional reasons the income provisions are void. At this point we must consider subdivisions 1 and 2 of paragraphs 8, 9, 14, 23 and 24. In paragraph 8, subdivision 1, testator directs the trustees to pay $1,200 for the use of Anne Barbara per annum. Subdivision 2 of said paragraph directs the payment of $1,300

per annum for tuition and disbursements incidental to the attendance of said daughter at such private schools, summer camps, colleges and professional schools, " As they, my said trustees shall from time to time select." It further provides that if said daughter, *either herself* willfully or pursuant to the direction or persuasion of any guardian or custodian, fails to attend such private schools, summer camps, colleges or professional schools selected or approved by my said trustees, then and in that event, I direct my trustees to pay and apply at the end of each year the whole or any part of the sum of $1,300 not expended for the purposes and under the conditions hereinbefore set forth, to the *American Civil Liberties Union* or to such other organization, the objects and purposes of which most nearly approach those of the present American Civil Liberties Union, leaving the selection of such organization to the discretion of my trustees. Paragraph 9, above quoted, in emphatic language makes the trustees absolute masters of the maintenance and education of Anne Barbara and goes so far as to authorize them to suspend payments and accumulate such portions of income as they deem advisable.

Paragraph 14 contains a broad, all-inclusive, *in terrorem* clause against not only a contesting of the probate of the will, but also against the denying or calling into question of the validity of the provisions contained therein, as well as against the opposing of the execution of any of the provisions or directions contained therein on the part of the executors and trustees. It is so extreme as to visit the *in terrorem* penalties upon any infant legatee or beneficiary for the acts of her guardian along the aforesaid lines, viz., probate contest, contest of validity of provisions of will and opposition to execution of provisions by trustees. Notwithstanding the provisions already made in subdivision 2 of paragraph 8, paragraph 14 contains also the following: " In the event that my said daughter shall either because of her own refusal or because of any act, action or proceeding committed or instituted by my wife Esther K. Carples or other guardian, fail to attend such private schools and summer camps as my executors and trustees shall approve and direct, then and in that event, I empower and direct them to suspend all payments of income heretofore directed to be paid to the use of my daughter, but in no event shall such payment of income be suspended after my daughter shall have completed her secondary or High School education or shall have arrived at the age of eighteen (18) years, whichever shall first occur, excepting that the foregoing provisions for suspension of income shall also be operative in the event that my daughter shall by reason of any action or influence instituted or exercised by her parent or guardian

be prevented against her wishes from entering and pursuing her studies at any collegiate institution or professional school which my executors and trustees shall approve; all income the payment of which shall be suspended in accordance with the foregoing provisions, shall be accumulated and paid to my said daughter when she shall arrive at the age of twenty-one (21) years."

In paragraph 23 testator expresses the desire that the three trustees subdivide their activities and " that Leo Hanau shall charge himself with the general care and supervision and welfare of my beloved daughter Anne Barbara Carples," and then by paragraph 26 he names his friend Sophia Robison, wife of Sylvan Robison, in place of said Hanau should he fail to serve or at any time resign as trustee, or die. Testator's daughter is now eleven years old. These provisions covering the child's share in the income and the *in terrorem* clause of subdivision 2, paragraph 8, the *in terrorem* clause of paragraph 9, above referred to, considered with the plan to subject her to the domination of a man stranger to the blood, so far as appears, and if he ceases to act, of Sophia Robison, a friend of testator, are so absolute, so vital, so calculated to separate mother and child and break down parental control and filial love and respect, and so coupled with harsh and cruel penalties that they are undeniably against public policy and void. (*Bryant* v. *Thompson*, 59 Hun, 545; *Matter of Haight*, 51 App. Div. 310, 313; *Whiton* v. *Harmon*, 54 Hun, 552, 555; *Wright* v. *Mayer*, 47 App. Div. 606; *Cruger* v. *Phelps*, 21 Misc. 252; *O'Brien* v. *Barkley*, 60 N. Y. St. Repr. 520.)

There remains to be considered the question as to the accumulations authorized in paragraph 9. The attempt by the testator in these provisions to authorize the trustees " to suspend payment of and accumulate such portions of said income as they shall deem advisable in the interest of my said daughter or *her issue*," is clearly void under section 16, subdivisions 1 and 2, of the Personal Property Law (as amd. by Laws of 1928, chap. 172) and section 61, subdivisions 1 and 2, of the Real Property Law (as amd. by Laws of 1915, chap. 670), *except for the minority of the daughter.* Subdivision 1 of both the aforesaid sections permits the accumulation of income for the benefit of one or more minors " *then in being.*" Therefore, the direction for the accumulation of the income " for the use of *her issue*," she having at the time of the death of the testator *no issue*, is void under the statute.

For all of the reasons above set forth I hold that all of the provisions contained in paragraphs 8, 9, 10, 11 and 12 of testator's will are void. Proceed accordingly.