In the Matter of the Estate of LENA FORTE, Deceased.

Surrogate's Court, Kings County, October 31, 1933.

*Joseph Adams*, for Ignazio Scalisi, trustee.

*Theodore L. Kahn*, for Domenick Forte and Ignazio Forte.

*Jonathan Greene*, special guardian.

WINGATE, S. So far as the diligence of counsel and the independent research of the court have disclosed, the precise question herein presented is novel in the tribunals of this State, although closely related questions have twice been the subject of *nisi prius* adjudication. Further than this, a precise parallel has appeared only four times in the entire history of Anglo-Saxon jurisprudence, once in the State of Missouri and thrice in England.

The concrete problem relates to the validity of a condition, attached to a testamentary gift to a child, effecting a defeasance of the benefit in the event that the beneficiary come into the custody of his father " by legal means or without the written consent " of the trustee named in the will.

The principle is primary that every person may dispose of his property on death in any manner he sees fit, so long as such disposition does not contravene established rules of law. (*Matter of Mihlman*, 140 Misc. 535, 538; *Matter of Larney*, 148 id. 871, 877; *Matter of Burke*, 86 id. 151, 153.) The rules of law, pertinent in this connection, are of two varieties, those imposed by statute and those resulting from judicial decision. The former are the more familiar, since they are the subjects of constant application. Prominent in this classification are such examples as sections 42 and 61 of the Real Property Law, respectively prohibiting restraints on alienation beyond two lives in being (*Matter of Terwilligar*, 135 Misc. 170, 175; affd., 230 App. Div. 846; *Matter of Duffey*, 144 Misc. 140, 144; affd., 238 App. Div. 863; *Matter of Pereman*, 148 Misc. 906, 908) and the accumulation of income for an adult (*Matter of Kunz*, 139 Misc. 869, 872; *Matter of Meyer*, 140 id. 1, 4; *Matter of Friday*, 148 id. 899), section 17 of the Decedent Estate Law, rendering voidable charitable gifts in excess of one-half of the estate upon the objection of specified relatives (*Matter of Smallman*, 141 Misc. 796, 798; *Matter of Sloat*, Id. 710, 712; *Matter of Mosley*, 138 id. 847, 851), and section 18 of the same law, preventing the disinheritance of a surviving spouse. (*Matter of*

*Greenberg*, 141 Misc. 874, 887; affd., 236 App. Div. 733; affd., 261 N. Y. 474; *Matter of Mihlman*, 140 Misc. 535, 537.)

The second class of limitations upon the right of testamentary disposal, while encountered less frequently, and sometimes presenting difficulties in practical application, is equally established and as clearly defined.

The principle is as old as the common law that a stipulation or condition in a contract or otherwise involving a breach of duty by the obligor in relation to any matter in which a public interest is involved, is unenforcible and void. An early recognition of the extent of this doctrine is found in the opinion of Chief Justice PARKER in *Mitchel* v. *Reynolds* (1 P. Wms. 181), decided in 1711. The court there points out (at p. 189): " All the instances of conditions against law in a proper sense, are reducible under one of these heads.

" 1st, Either to do something that is *malum in se,* or *malum prohibitum.* * * *

" 2dly, To omit the doing of something that is a duty. * * *

" 3dly, To encourage such crimes and omissions. * * *

" Such conditions as these, the law will always, and without any regard to circumstances, defeat, being concerned to remove all temptations and inducements to those crimes."

The most frequently encountered modern application of the second principle noted by the learned chief justice relates to conditions involving some violation of the duty which one member of a family owes to another. The family is the ultimate foundation upon which the soundness of the structure of the State depends. " The family is the origin of all society and all government. The happy family, well organized, and successfully discharging its functions, by strengthening the parents for the proper discharge of life's duties, while it fits the children to succeed to those duties, is the highest type of human goodness, and the surest source of human happiness. The whole frame of government and laws has been said to exist only to protect and support the *family,* so that it may develop and perfect the character of its members." (*People* v. *Olmstead,* 27 Barb. 9, 33.)

The almost innumerable applications of this basic concept in the laws of every civilized community will be obvious upon a moment's reflection, involving, as they do, the establishment and maintenance of a family unit, the support of wife and children by the husband, the care and training of the children by the parents, the obligations of filial regard and obedience, and the protection of the home against injurious alien intrusion. In all of these and many other elements which must be necessary con-

tributing factors to the maintenance of successful and happy homes and the training and development of the youth which must form the bone and sinew of the State in the days to come, the community and nation possess a vital interest.

Consonant with this thought, conditions in testamentary gifts involving the violation of any such duty or which tend to " encourage such crimes and omissions " have been invalidated whenever encountered by the courts.

The most common example of testamentary conditions which have been declared void for the reasons noted, relate to marriage. In this connection it has uniformly been determined that any limitation upon a bequest which tends to restrain the legatee from entering into the married state, or to induce him to violate the obligations of an existing valid marriage will be voided. Thus in *Matter of Haight* (51 App. Div. 310) Mr. Justice HIRSCHBERG, in an elaborate decision which reviewed many pertinent precedents, declared void a condition in a legacy that its donee should receive one-half of the income of the trust in question while he continued married to his present wife and the whole thereof upon the termination of the marriage, declaring him to be entitled to the whole in both events. It has also frequently been held that conditions invalidating gifts if the beneficiary entered into any marriage, or if estranged couples became reconciled, were void (See *Whiton* v. *Harmon*, 54 Hun, 552, 555; *O'Brien* v. *Barkley*, 28 N. Y. Supp. 1049, 1055, reported by memorandum only, 78 Hun, 609; *Potter* v. *McAlpine*, 3 Dem. 108, 124, 125; *Merriam* v. *Wolcott*, 61 How. Pr. 377, 391; *Matter of Catlin*, 97 Misc. 223, 231), and the same has been held respecting the imposition of testamentary conditions which, under ordinary circumstances, would amount to an inducing cause for the procurement of a separation or divorce by a married person. (*Crager* v. *Phelps*, 21 Misc. 252, 265.) On the other hand, reasonable conditions on marriage, such as that the legatee should not marry prior to the age of twenty-one without the consent of a surviving parent or trustee (*Hogan* v. *Curtin*, 88 N. Y. 162, 171), or that he should not marry a certain named individual, or outside of a specified religious faith (*Matter of Seaman*, 218 N. Y. 77, 81), have been held valid. The same result has been reached in respect to conditions that the legatee should display certain traits of character (*Rushmore* v. *Rushmore*, 12 N. Y. Supp. 776, reported by memorandum only, 59 Hun, 615), or that he should refrain from the use of tobacco and liquors and the visiting of disreputable places. (*Onderdonk* v. *Onderdonk*, 5 N. Y. Supp. 242, reported by memorandum only, 52 Hun, 614; affd., 127 N. Y. 196.)

Such determinations, however, far from being exceptions to the general rule under consideration, amount to substantial reaffirmations thereof. The public interest is directed to a happy, fruitful marriage, and the imposition of a condition which, when reasonably construed, may be found to contribute to the same end, is consonant therewith and not in contravention thereof.

It is not unnatural that cases involving situations in which the public policy respecting the parental duty to rear and properly train the future citizens of the State is in issue, should be of less frequent occurrence than those concerning the formation and preservation of the family unit itself. Since, however, one of the main objects of the latter is the fostering and advancement of the former, it must be obvious that the same legal principles apply to both, and such has been the uniform determination whenever the question has presented itself.

The only pertinent decision in this State on this phase of the subject was made by former Surrogate O'Brien of New York county in *Matter of Carples* (140 Misc. 459). The provisions of the will then before the court voided a trust provision for a daughter in the event that she " either herself willfully or pursuant to the direction or persuasion of any guardian or custodian " attended any summer camps or educational institutions other than those selected by the named trustee. This direction, coupled with the disinheritance of the widow, who was the child's mother, was held by the learned surrogate to be a " plan to subject her to the domination of a man stranger to the blood." He, therefore, determined (at p. 468) that the conditions were " so absolute, so vital, so calculated to separate mother and child and break down parental control and filial love and respect, and so coupled with harsh and cruel penalties that they are undeniably against public policy and void. (*Bryant* v. *Thompson*, 59 Hun, 545; *Matter of Haight*, 51 App. Div. 310, 313; *Whiton* v. *Harmon*, 54 Hun, 552, 555; *Wright* v. *Mayer*, 47 App. Div. 606; *Cruger* v. *Phelps*, 21 Misc. 252; *O'Brien* v. *Barkley*, 60 N. Y. St. Repr. 520.) "

A related determination was made by former Surrogate Fowler in *Matter of Anonymous* (80 Misc. 10). There the condition imposed upon the right to enjoy the testamentary benefit was that the legatee should take immediate steps to abrogate the adoption of a child, theretofore legally effected.

In the course of a characteristically erudite opinion, the court said (at p. 14): " It is apparent to me from the authorities just cited that a condition annexed to a gift to a mother, whether adoptive or by nature, that she shall separate herself from her child and sever the parental relation and neglect her maternal

duties to the child, is both contrary to law and against public policy and therefore to be taken as void." (See, also, *Matter of Hutchins*, 147 Misc. 462, 464.)

Turning to the decisions from other jurisdictions, it is found that in *Witherspoon* v. *Brokaw* (85 Mo. App. 169) substantially the same question as that at bar was presented. The testator gave certain property to a niece for her use so long as she remained separated from her husband, with the further provision that upon her death before that of her husband, her share should be held for the benefit of her daughter " so long as she shall be kept from the control and custody of her said father, and no longer, and upon his assuming such control and custody said property and the proceeds shall vest in my said son."

The court in holding the conditions void both as to the mother and daughter, said (at p. 173): " But where the condition of the will shows by its terms and provisions that it is intended as a premium on the separation, and its object is to prevent a resumption of the marriage relation, it is void. We so regard the present will. It is apparent from the face thereof that the object of the testatrix was to make the separation final and that a reconciliation would be punished by a failure of the legacy.

" The same may be appropriately said as to the contingent provision for the daughter. It is evident that the testatrix was determined that the husband and father should not resume his relations as parent and custodian of the child, and such condition (in the view now presented) is void."

In *Matter of Boulter* (91 L. J. Ch. 250) certain testamentary benefits were given to the children of testator's son subject to a proviso that they should continue their residence in England and should not reside elsewhere except for periods of not exceeding six weeks in any year.

The opinion of the court respecting this limitation reads as follows (at p. 253): " In my judgment, such a condition is clearly a condition contrary to public policy. It seems to me very liable to cause a father to neglect to perform his duties towards his children in such a case as has arisen in the present case; and a circumstance that I do not overlook is the possibility of the children coming by their next friend to the Court and putting the case to the Court as to whether they should go abroad with their father and lose their property, or should remain in England, retaining the property, and losing the advantages of being with their parents. It seems to me that the whole tendency of this provision is one which in many sets of circumstances, including the circumstances now disclosed, might have a very prejudicial effect indeed upon

the position of the infants and upon the judgment that has to be exercised by their parents for their benefit."

The will in _Noel_ v. _Sandbrook_ (L. R. [1912] 2 Ch. 471) after giving legacies to testator's grandchildren provided that if either " shall live with or be or continue under the custody, guardianship or control of their father   *   *   *   or be in any way directly under his control " their respective benefits should cease.   Concerning this condition, the court said (at p. 476): " It appears to me that this condition is inserted in the will with the direct object of deterring the father of these two children from performing his parental duties with regard to them, because it makes their worldly welfare dependent on his abstaining from doing what it is certainly his duty to do, namely, to bring his influence to bear and not give up his right to the custody, the control and education of his children; and it seems to me it is also a direct consequence of a condition of this sort that the discretion of the Court with regard to the custody and maintenance of its wards is equally interfered with.   If, for example myself — these children being now wards — thought it was for their benefit to direct that they should spend the next year or so with their father (who is a medical officer on furlough from the Malay States) at the seaside under his direct control, I should be fettered in exercising the discretion vested in me by the knowledge that, if I exercised it in this way, I might endanger their worldly welfare and cause them to forfeit what has been given them under the will."

To like effect is the determination in _Matter of Morgan_ (26 T. L. R. 398) in which the court declared that " the condition was almost as vicious as it was conceivable for one to be and was clearly invalid," since it required the omission to perform a filial duty and encouraged such action.

The principles motivating these decisions are conclusive of the main controversy at bar.   Although no testimony in respect to the relations of the parties was adduced, their briefs agreed upon the pertinent facts.   The testatrix at the time of her death was married to the Domenick Forte referred to in the will, the child, Ignazio Forte, being the fruit of their union.   The husband and wife, however, were estranged and living apart, the mother and child residing with her relatives and having no relations of any sort with the husband and father.   Subsequent to testatrix's death, the father obtained the custody of the child in habeas corpus proceedings in the Supreme Court.   This determination is conclusive for present purposes on the question of the fitness of the father to care for and rear the child, since this is the only pertinent consideration in such a proceeding.   (_Matter of Davis_, 142 Misc.

681, 687, and cases cited.) Reduced to its lowest terms, therefore, the testamentary limitation in question seeks to impose a penalty upon the performance by a father, who has demonstrated that he is a proper custodian for his child, of the parental duties which the interests and policy of the State require him to perform. This falls clearly within the language of the second and third classifications of the rules in *Mitchel* v. *Reynolds* (*supra*), with the result that the limitation upon the enjoyment of the testamentary benefit will be deleted with like effect as if it were not contained in the gift.

The further contention of the father and special guardian that the executor and trustee named in the will should be removed, does not appeal to the court. It is the primary right of every testator to make such provisions in respect to the disposal of his property and the management of his estate as he sees fit, provided they do not contravene the established principles of law. It is said by the Court of Appeals in *Matter of Leland* (219 N. Y. 387, at p. 393): " The courts will not undertake to * * * name a better executor for the testator. They will not add disqualifications to those specified by the statute, nor disregard testator's wishes by too liberal an interpretation of the specific disqualifications." (See, also, *Matter of Canter*, 146 Misc. 123, 127.)

There is, of course, not only no presumption to the effect that a fiduciary will be derelict in or will perform his duties in an improper manner but the reverse is the case. (*Matter of Chisholm*, 148 Misc. 158, 159; *Matter of Roney*, Id. 70, 72; *Matter of Spanier*, Id. 879, 882.) The mere fact that he is named as alternate beneficiary in the event that the infant dies prior to reaching his majority does not disqualify him for his fiduciary position even though it calls for the exercise of certain discretionary powers. (*Matter of Cowen*, 148 Misc. 35, 37.)

It is the primary obligation of the father to support and educate the child (*Matter of McNamara*, 138 Misc. 526, 531), and in view of the remedies which are always available against a trustee who proves derelict in the performance of his duties, the court is of the opinion that the retention of the separate funds of the child by one who is not only sympathetically familiar with him, but whose natural tendency would be to see that such funds are not diverted for expenditures which should primarily be borne by the father would probably be for the child's best interest.

Proceed accordingly.