### JENKINS v. FIRST NAT. BANK IN DALLAS.

Civ. No. 14.

District Court, N. D. Texas, Dallas Division.

Feb. 8, 1939.

J. A. Gooch, of Fort Worth, Tex., for plaintiff.

Hamilton, Lipscomb, Wood & Swift and Ralph Wood, all of Dallas, Tex., for defendant.

ATWELL, District Judge.

T. L. Bradford, Sr., a successful citizen of Dallas, Texas, created a trust for the benefit of his grandchild, Hugh Bradford, now Hugh Jenkins, Jr., the seventh section of which provided, that, "After the death of T. L. Bradford, Sr., the trustee shall pay the net income thereafter accruing, to the said Hugh Bradford, until the first of January, 1952, but he shall have the option, to be exercised by him after he reaches legal age, or by the guardian of his estate during his minority, to leave all or a portion of such income with the trustee to become a part of the corpus, provided, however, that no part of such income shall be paid to the said Hugh Bradford, or to the guardian of his estate for him, during any time that he may be in the legal custody of or living with his father, Hubert J. Jenkins, while he is under the age of twenty-one years, nor shall any of such income at any time be paid over to the said H. J. Jenkins as guardian of the said Hugh Bradford, if he shall qualify as such, but during all such times the income shall be retained by the trustee and become a part of the corpus of the trust estate."

The trustee is the defendant, the First National Bank in Dallas.

Plaintiff's contention is that the provision just quoted is void, because it is against public policy in that it tends to separate father and son in violation of the laws of nature, and tends to alienate the natural affection flowing from son to father and from father to son.

There is a well marked majority of decisions throughout states, other than Texas, which show a disapproval of any legacy or trust which tends to cause marital infelicity or separation, or which disrupts parental custody or child love. In re Forte's Will, 149 Misc. 327, 267 N.Y.S. 603; In re Sandgren's Estate, 160 Misc. 784, 290 N.Y.S. 660; Matter of Haight, 51 App.Div. 310, 64 N.Y.S. 1029; Whiton v. Harmon, 54 Hun 552, 8 N.Y.S. 119; O'Brien v. Barkley, 78 Hun 609, 28 N.Y.S. 1049; Potter v. McAlpine, 3 Dem.Sur., N.Y., 108; Merriam v. Wolcott, 61 How. Prac., N.Y., 377; Matter of Catlin, 97 Misc. 223, 160 N.Y.S. 1034; Cruger v. Phelps, 21 Misc. 252, 47 N.Y.S. 61; Matter of Carples' Estate, 140 Misc. 459, 250 N.Y.S. 680; Matter of Anonymous, 80 Misc. 10, 141 N.Y.S. 700; Witherspoon v. Brokaw, 85 Mo.App. 169; Matter of Boulter, 91 L.J. Ch. 250; Noel v. Sandbrook, L.R.1912, 2 Ch. 471; Tripp v. Payne, 339 Ill. 178, 171 N.E. 131; 28 Ruling Case Law 328, 316; Hawke v. Euyart, 30 Neb. 149, 46 N.W. 422, 27 Am.St.Rep. 391; Wright v. Mayer, 47 App.Div. 604, 62 N.Y.S. 610; Coe v. Hill, 201 Mass. 15, 86 N.E. 949; Conrad v. Long, 33 Mich. 78; Graydon's Ex'rs v. Graydon, 23 N.J.Eq. 229; University of Pennsylvania Law Review, Vol. 65, pages 635–656, 657, 658; White's Estate, 163 Pa. 388, 30 A. 192; Re-statement of Law of Trusts as adopted by the American Institute 1935, which pronounces invalidity even though the performance does not involve the commission of a criminal or tortious act; and at page 194, pronounces invalidity when its enforcement would tend to encourage parents not to perform their duties.

■ General principles of other jurisdictions may not control, however well established, if the law of the situs is different. 65 C.J. 334; Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

In Ellis v. Birkhead et al., 30 Tex. Civ.App. 529, 71 S.W. 31, 34, writ of error denied by Supreme Court of Texas, the

Court of Civil Appeals of Texas held, speaking through Chief Justice Conner, after quoting certain cases in other jurisdictions, and then making specific excerpts from one of them, wrote: "In our judgment, the will before us should not be construed as manifestly intended to incite a divorce between appellees, but, rather that the testator merely intended to provide for his daughter in the contingency named, and to protect her in the meantime from the improvidence of her husband."

Preceding this expression, it was stated, "While it may be readily conceded that conditions in a will manifestly intended to bring about separation or divorce are void, we think they should be clearly so before the courts, by decree, nullify the expressed will and purpose of the testator, for our statutes on the subject, as well as sound considerations of public policy, dictate that those having testamentary capacity shall have the greatest freedom, consistent with public safety, in the disposition of their estates by will, and the importance of this right should not be ignored."

The soul of this decision, and of the rule in Texas, and as inferred in Re Kelley, 225 App.Div. 29, 232 N.Y.S. 84, is that the provisions of the trust or will must be manifestly intended to bring about that which is, in morals, bad. This must clearly appear. Such an inference should never be drawn when a legitimate purpose is just as apparent.

The use of the word "tend," in the cited adjudications, on this question, italicizes the reasonableness of the Texas rule. It may be that the Texas rule is supported by thoughts that arise out of such foreign cases when more thoughtfully considered. The word "tend" is based on an assumption, and the assumption grows out of, or finds its basis in, human desire for money. If it is patent in a case that the tendency is absent because of the person's immunity from such desire, then the assumption fails. Hence, it is suggested that the criticised trust, or provision, must clearly tend to result in the anti-public-good act.

Every day furnishes instances where money benefits are ignored. Love laughs at locksmiths, at promised rich rewards, and frequently seeks less attractive economic levels. Filial devotion is rarely bartered for dollars and cents. There are cases that exhibit cold, calculating facts which disregard both filial love and marital consistency.

This trust was made in 1931 when the law had taken from the father, Jenkins, the son, Hugh, because of alleged unfitness. That which is done lawfully may not be said to be against public policy. In the light of that legal determination, Bradford created the trust with approximately half a million dollars, and provided that when his grandson, young Jenkins, shall have reached twenty-one, the income will be at his disposal. That will be in 1944. In 1952, the whole legacy, including the income up to 1944, which shall have become a part of the corpus, becomes his.

That the courts have since re-examined the fitness of father Jenkins, and have pronounced him fit to have the custody of his son, and have vested guardianship authority in him, does not change the situation. He is charged with doing that which a father should do for his son. Apparently, both he and the son are enjoying that happiness of association which legitimately belongs to a parent and child. If there were a tendency in this trust to disrupt that relation, it has failed in its purpose. Neither are we permitted to find that tendency in it when it is not clearly apparent.

Inspecting the provisions of the trust a little closer, we discover that the protected minor never loses the bequest. It remains from inception, until 1952, his, and comes to him in all of its fullness, regardless of where he lives, or with whom he associates. Under the laws of Texas, his father is bounden to support, maintain and educate him and may not have recourse to any funds that may be his for any other purpose. Moore v. Moore, Tex. Civ.App., 31 S.W. 532; article 4180, Revised Civil Statutes of Texas 1925, Vernon's Ann.Civ.St.Tex. art. 4180.

The trustee bank is well fitted to garner and harbor and increase the bequest and save it against the day of its ultimate delivery. Neither the father, nor the guardian, at the time the minor is in the custody of the father, shall have any right over the income of the corpus, but it, too, shall be added to the main fund, and in this larger entirety be turned over when the trust completely fruits.

The application must be denied and the cause dismissed.