CHARLES COWLEY, administrator, *vs.* JENNIE S. TWOMBLY.

Middlesex.    March 10, 1899. — May 19, 1899.

Present: HOLMES, KNOWLTON, LATHROP, BARKER, & HAMMOND, JJ.

*Devise and Legacy — Trust — Definiteness as to Beneficiary — Public Policy.*

A testator, by his will, gave to his son F. all the residue of his estate in trust, to sell and dispose of any or all of the real estate, and to invest the proceeds thereof in his discretion, and to pay from time to time in his discretion so much of the income of the trust property as he should deem necessary for her maintenance to the testator's niece, J., or, instead of paying her any part of such income, to add it to the principal; and provided that the trust should continue so long as F. should remain the husband of M., then his wife, and for such time thereafter as F. should in his discretion desire and determine, but that it should not continue for more than ten years after he should cease to be M.'s husband; that upon the termination of the trust by the death or divorce of M. and the expiration of ten years thereafter, or of less than ten years if F. should so elect, he should have all the trust property as his own, free from any trust, and in fee; and that, in case F. should die prior to the death or divorce of his wife, all the trust property should go to J. in fee. *Held,* that the trust was valid.

TORT, by the administrator of the estate of Foster Ham, for the conversion of "one sofa, one Winchester rifle, two tons of hay, and three hundred and twenty-five dollars in bills and notes." Trial in the Superior Court, without a jury, before *Braley,* J., who reported the case for the determination of this court, in substance as follows.

The plaintiff was duly appointed administrator of the estate of Foster Ham on April 5, 1898. Foster Ham was the only son and heir at law of Cyrus Ham, who died on March 21, 1891, testate. Foster Ham was married in 1865 to Mary Jane Ham, who survived him as his widow. There had been for some time prior to the death of Cyrus attempts made by Foster to procure a divorce from Mary J.; and in 1870 he obtained a decree of divorce from her in Illinois. This decree was afterwards set aside. About 1875 he obtained another decree of divorce in New Hampshire, and subsequently remarried Mary J. In the fall of 1890 he filed a third application for divorce in this Commonwealth, which, being contested, was dismissed. Foster and Mary J. ceased to live together as husband and wife in 1893.

On March 11, 1891, Cyrus Ham made and executed his last will, which was duly admitted to probate, and Foster Ham was appointed executor thereof.

The sixth clause of this will, which is the only part thereof material to this case, was as follows: " I give, devise, and bequeath to my son, Foster Ham, all the real estate, and also all the personal estate, of which I shall die seised or possessed, excluding said legacies to Foster Ham, Esther S. Woods, and Frank Ham, and also my funeral expenses and debts, and the costs and charges incident to the settlement of my estate, to said Foster Ham, not for himself individually but as trustee in trust as follows : viz. said Foster Ham, as trustee under this my will, may in his discretion sell and dispose of any or all real estate coming to him under this will as such trustee,' provided that the meadow lands and other lands adjoining the same shall not be sold at any less price than one hundred dollars per acre, and provided that my land known as the Dowse Lot shall not be sold at any less price than two thousand dollars; and said Foster Ham, as trustee of said property, may invest the proceeds of any sale or sales so made by him in other real estate, or in the stock of any joint stock or corporation, or otherwise, according to his best discretion, and may sell the same and reinvest the proceeds from sales so made by him in his discretion.  So much of the rents and proceeds of real estate so held in trust by him, and so much of the interest or income of personal estate so held in trust by him, as he shall deem necessary for the comfortable maintenance of my deceased sister's daughter, Mrs. Jennie S. Twombly, wife of Edgar F. Twombly, of Rochester in the State of New Hampshire, he, said trustee, may pay to her from time to time in his discretion ; or he may, instead of paying the whole or any part of such rents, proceeds, interest, and income to said Jennie, add the whole or any part thereof to the principal of said trust property so held by him as trustee under this my will ; and he shall not be compelled to pay anything to or for said Jennie except in his own discretion.  And this trust shall continue so long as said Foster Ham shall remain the husband of Mary Jane Ham, now his wife, and for such time thereafter as said trustee shall in his discretion desire and determine, provided that the trust afore-

said shall not continue for more than ten years after said trustee shall cease to be the husband of said Mary Jane Ham. Upon the termination of said trust by the death or divorce of said Mary Jane Ham and the expiration of ten years thereafter, or of less than ten years if said trustee shall so elect, my will is that my said son, Foster Ham, shall have and retain all the real estate and all the personal estate then held by him as such trustee as his own, free from any further trust; to have and to hold the same to him, his heirs and assigns, to his and their use and behoof forever, free from any trust or obligation whatsoever. And in case my said son shall die prior to the death or divorce of his said wife, then my will is that all the real and personal estate held by my said son as trustee under this my will at the time of his decease shall descend to my said niece, Jennie S. Twombly, of Rochester, in the State of New Hampshire, to have and to hold the same to her, her heirs and assigns, forever."

On May 9, 1893, the Probate Court duly allowed the final account of Foster Ham, as executor of the will, which account showed that he had charged himself as such executor with real estate and personal property amounting to $11,773, and had credited himself with such amount paid over to himself as trustee. The parties represented as interested in the account, and who signed an assent to its allowance, were Foster Ham, trustee, and Jennie S. Twombly, the defendant in this case.

The defendant, after the death of Foster Ham, took possession of the real and personal estate held by him. Among the personal property were two tons of hay in the barn, cut and stored before the death of Foster Ham; also one rifle, which never was the property of Cyrus Ham, but was the property of Foster Ham; a promissory note for $200 payable to the " order of Foster Ham, trustee of estate of Cyrus Ham," and made by one Parkhurst, from whom the defendant received the sum of $207 in payment of the note, and thereupon surrendered the note to him. The evidence showed that the sofa named in the declaration was the property of Cyrus Ham at the time of his death, and that the money which had been received by the defendant, amounting to $150, and which is described in the plaintiff's declaration under the item of " three hundred and twenty-five dollars in bills and notes," was received as rents

and profits of the real estate since the death of Foster Ham, with the exception of ten dollars which was due to him at the time of his death and subsequently collected by the defendant.

The judge found that the sofa was worth $10, the rifle $15, the hay $40, and the note $207.

The plaintiff asked the judge to rule that he was entitled to recover the value of the sofa, the hay, the note, and also the money received by the defendant as the rents and profits of the real estate.

The judge refused so to rule ; and found and ordered judgment for the plaintiff for the value of the rifle.

If the ruling was right, by agreement of the parties, the judgment was to be affirmed ; otherwise, judgment was to be entered for the plaintiff for $422, with interest from the date of the writ.

*J. S. Patton*, for the plaintiff.

*N. D. Pratt*, for the defendant.

BARKER, J.   If the sixth clause of the will created a valid trust, all of the personal property for which the plaintiff sues except the one article for the value of which he had judgment in the court below was held by his intestate only in his capacity as trustee, and at his death was not assets of his own estate. *Trecothick* v. *Austin*, 4 Mason, 16, 29.   *Johnson* v. *Ames*, 11 Pick. 173, 181.   *Buttrick* v. *King*, 7 Met. 20.   *Hunnewell* v. *Lane*, 11 Met. 163.   *Farrelly* v. *Ladd*, 10 Allen, 127.   Upon the death of the plaintiff's intestate, under the terms of the trust, the absolute ownership of all the trust property went to the defendant.   The title and right of possession being in her, no reason is shown why the plaintiff as administrator of the estate of the deceased trustee has any claim upon or right to possession of the property of the trust.

The plaintiff contends that the trust was void, and that the trust property belonged absolutely to his intestate, for two reasons ; first, that the trust was void for indefiniteness in the beneficiary, and, secondly, because it was against public policy, as tending to break up the marriage relation between the testator's son and the son's wife.

There is no such indefiniteness as to the beneficiary as to make the trust void.   In any event, the trust property must vest absolutely in the son before his death, or then must vest

absolutely in the defendant. During the continuance of the trust the income might be paid in whole or in part to the defendant, in the discretion of the trustee, or be added to the principal. The terms of the trust made it certain that the whole trust property should go to a beneficiary designated by the testator, and ascertainable, at the latest, at the termination of the trust.

The scheme of the trust no .more tended to induce the son improperly to procure a divorce between himself and his wife, than to induce him to procure her death. Either event would give the son an estate which otherwise he could not have. But the testator was under no obligation to give property to his son, and had full right, if he chose, to give it to the defendant, his niece. · There is here no gift to the son upon a condition that the son should lose the benefit of the gift if he should not separate from his wife, as in *Wren* v. *Bradley*, 2 DeG. & S. 49, and in *Conrad* v. *Long*, 33 Mich. 78. What the testator has done is to provide that, upon the son's death, the property shall go to the defendant, unless before the son's death the woman who when the will was made was the son's wife had ceased to be such by reason of death or divorce. That a devisee of a contingent remainder will benefit by the death of the life tenant does not make such a devise void as against public policy, because tending to induce the remainderman to compass the death of the life tenant. The separation of husband and wife, the marriage continuing, is against public policy. Hence conditions annexed to limitations by settlements or wills, providing that a husband or wife shall lose the benefit of an estate unless they live separate, have been held void. *H.* v. *W.*, 3 Kay & J. 382. *Cartwright* v. *Cartwright*, 3 DeG., M. & G. 982. *Wren* v. *Bradley*, 2 DeG. & S. 49. *Conrad* v. *Long*, 33 Mich. 78. But while the separation of persons who are husband and wife is against public policy, divorces are provided for, sanctioned and regulated by law. There is no more likelihood or presumption that a divorce will be wrongfully brought about by one of the parties to a marriage in order to secure property, than that a death will be so occasioned. A testator no more offends public policy by simply making his bounty contingent upon the occurrence of a divorce than of a death.

*Judgment on the finding.*