JUSTIS H. DAVIDSON, Executor of the Last Will and Testament of Joseph Davidson, Deceased,

*vs.*

WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee for Jane Sherwood Davidson under the Last Will and Testament of Joseph Davidson, Deceased, WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee for Ann M. Davidson under the Last Will and Testament of Joseph Davidson, Deceased, WILMINGTON TRUST COMPANY, a corporation of the State of Delaware, Trustee of all the rest, residue and remainder of the Estate of Joseph Davidson under the Last Will and Testament of Joseph Davidson, Deceased, JUSTIS H. DAVIDSON, Executor of the Last Will and Testament of Ann M. Davidson, Deceased, JANE SHERWOOD DAVIDSON, JUSTIS H. DAVIDSON, VIOLET SHERWOOD JACKSON KINCH, DAISEY ETTA JACKSON MYERS, EDNA MAY JACKSON BIERS, EDNA ALICE JACKSON ZERBY and MARY TAYLOR DAVIDSON WILLIAMS.

*New Castle, July 18, 1938.*

*Charles F. Richards,* for complainant as executor and as a defendant individually.

*Robert H. Richards, Sr.,* for Wilmington Trust Company, trustee under the will of Joseph Davidson for Jane Sherwood Davidson, trustee under the same will for Ann M. Davidson, and for Justis H. Davidson, executor of Ann M. Davidson.

*Daniel F. Wolcott,* for the guardian *ad litem* of Jane Sherwood Davidson.

*Caleb R. Layton, III,* for Wilmington Trust Company, trustee of the residuary estate under the will of Joseph Davidson.

THE CHANCELLOR: Joseph Davidson died on or about July 11, 1930, leaving a last will and testament dated February 13, 1929, which was duly admitted to probate.

After providing for the payment of his debts and expenses and bequeathing a few specific legacies, the testator created three trusts, naming Wilmington Trust Company as trustee of each.

One trust was of a sum of ten thousand dollars which the trustee was to invest and which, together with the income directed to be accumulated thereon, it was to pay to the testator's granddaughter, Jane Sherwood Davidson, when she arrived at the age of twenty-one years, but if she should die before arriving at said age, then the said sum and its accumulated income was to fall into the residuary estate.

The second trust was of the sum of twenty thousand dollars which the trustee was to invest and the income from which it was to pay to the testator's sister, Ann M. Davidson, for life, and immediately upon her death the principal and all unexpended income thereon was to become a part of the testator's residuary estate and be disposed of as in the general residuary clause of the will was provided.

The third trust was of the rest, residue and remainder of the testator's estate. It was given by the residuary clause to Wilmington Trust Company as trustee upon the following trusts:

"Item. All the rest, residue and remainder of my estate, of whatsoever kind, and wheresoever the same may be situate at the time of my decease, I give, devise and bequeath unto said Wilmington

Trust Company, In Trust to invest the same, and pay the net income arising therefrom quarterly or oftener, unto my son Justic H. Davidson for and during the term of his life, or as long as he remains the husband of his present wife Anna Marie Davidson. It is my will, and I do hereby order and direct that if the said Anna Marie Davidson should die during the lifetime of my said son, or if they shall be divorced, then and in either of said events I order and direct that said Trustee shall pay to my said son all of said rest, residue and remainder and all unpaid income thereon, and also all such sums of money as shall, under the provisions of this will, become a part of said rest, residue and remainder, freed and discharged of all trusts. If, however, payment of the same shall not be made to my said son during his lifetime, then upon his decease I direct said Trustee to pay the same in equal parts or shares to Violet Sherwood Jackson Kinch, Daisey Etta Jackson Myers, Edna May Jackson Biers, Edna Alice Jackson Zerby, all nieces of my deceased wife, and my niece Mary Taylor Davidson Williams, to have and to hold the same to them and their respective Heirs and Assigns forever. If any of the said last named legatees shall be dead at the time of making the distribution herein provided for, I do hereby order and direct that the share herein given to the one or ones so dying shall not lapse, but the same shall be paid to the Executor or Administrator of the one or ones so dying."

When the testator died his net personal estate had a value of $21,639.99 with which to pay the two pecuniary legacies composing the principal of the two trusts of ten thousand dollars and twenty thousand dollars respectively. At the time of his death the testator owned real estate of the clear value of about $39,150. As of the date of the will, the testator's personal estate had a net value of only $15,344.99 and the clear value of his real estate was about the same as it was when he died.

Three of the questions which the bill presents relate to the two pecuniary legacies bequeathed in trust for Jane Sherwood Davidson and Ann M. Davidson respectively. These are first, since the personal estate is insufficient to pay the legacies in full, may resort be had to the testator's real estate for the deficiency; second, the legacies not having yet been paid, from when, if at all, do they draw interest; and third, if they draw interest, what is the rate?

A fourth and the final question which the bill presents, relates to the gift of the residue to the trustee and particu-

larly to the interest therein of Justis H. Davidson, the son of the testator. The nature of this final question will be reserved for statement when the answer thereto is given at a later point in this opinion.

First, then, are the two pecuniary legacies entitled to look to the real estate to make good the deficiency of the personal estate to pay them in full? The rule is well settled in this State that when real estate is carried in a general residuary gift, it is chargeable with pecuniary legacies to the extent made necessary by the insufficiency of the personal estate to pay them in full, unless it appears from the will itself that the testator intended his real estate to be exonerated. *Security Trust Co. v. Bulcroft, et al.,* 21 *Del. Ch.* 242, 187 *A.* 13, where the authorities are collected. In this case the testator must have known that his personal estate was not sufficient at the time he executed his will to provide for full payment of the two pecuniary legacies. He must have known also, that this condition of insufficiency continued down to the date of his death a little over a year later. I can discover nothing in the will, either in its residuary clause or in the clause giving to the trustee of the residue a power to sell real estate which might be in the residue, which reveals an intent on the testator's part that his real estate should be relieved of the burden which the insufficiency of the personal estate to meet the pecuniary legacies thrust upon it. The principle of *Security Trust Co. v. Bulcroft, et al., supra,* and the cases therein cited applies.

Second and third—is interest chargeable on the legacies and if so, from when and at what rate? General pecuniary legacies are not due and payable until one year after the testator's death. *Revised Code* 1935, § 3853. They do not bear interest until after the expiration of that time. *Security Trust Co. v. Bulcroft, et al., supra; Custis, et ux., v. Potter's Adm'r.,* 1 *Houst.* 382, 68 *Am. Dec.* 422. The testator did not stand in *loco parentis* to his granddaughter,

Jane Sherwood Davidson, who lived with and was supported by her parents. The legacy to her which was postponed in payment, shows on its face that it was not intended to supply to her any of that immediate maintenance, support or education which is the concern of one who stands in *loco parentis* to another. Therefore, her legacy does not fall within the exception to the general rule which the Court of Errors and Appeals referred to in *Custis, et ux., v. Potter's Adm'r., supra,* as existing when the legatee is a child of the testator or one towards whom he has placed himself in *loco parentis.*

The two legacies bear interest from the date they were payable, viz., one year after the death of the testator. The circumstance that they are by implication partially chargeable on land does not take them out of the general rule and advance the date to the day of the testator's death. *Rice v. Rice, et al.,* 12 *Del. Ch.* 245, 111 *A.* 439, where the Chancellor distinguishes *George v. McMullin,* 3 *Del. Ch.* 269.

At what rate is the interest to be calculated? In *Custis, et ux., v. Potter's Adm'r., supra,* the Court of Errors and Appeals stated that when interest is allowed on a legacy from the date it becomes payable, it is only allowed for delay in payment. In fixing the rate, I can see no reason for departing from the general rule which measures the damages due to delay in payment of an overdue debt by the legal rate of interest. In this State the legal rate is six per cent. *Revised Code* 1935, § 3101. That is the proper rate to be allowed on the legacies here involved.

The fourth and final question arises out of the residuary clause of the will. By that clause the residue is given to Wilmington Trust Company in trust as shown by the extract from the will appearing in the above statement of facts.

It is contended in behalf of Justis H. Davidson that

the provision which makes the gift to him conditional upon the termination of the marital tie that exists between him and his wife, either by death or divorce, is void in law as calculated to disrupt the marriage relationship between man and wife which it is always the policy of the law to encourage and foster. The social philosophy which prompts the law on the one hand to encourage marriage by discountenancing unreasonable restraints upon its contraction, and, on the other hand, generally to look with disfavor upon all attempts to interrupt its continuance, is founded in the conception that the permanence of, and the continuity of peaceful and contented life in, the home as the primary social unit, is calculated to contribute to an immeasureable extent to the stability of a sound and wholesome social order. This philosophy does not need at this late day to be re-examined. It has been too long met with overwhelming acceptance to admit of question.

The fact that the law provides a means of dissolving the marital bond by proceedings in divorce, does not indicate an abandonment of its solicitude to encourage and preserve the marriage state. Divorce statutes are reconcilable with the social philosophy which underlies this solicitude. Because it is apparent that when existence of the marriage state in a given instance becomes fraught with such disturbing circumstances as that its continuance is calculated to frustrate the beneficent ends which its institution is thought to subserve, the law displays no inconsistency in providing that in such special instances the particular tie may be unloosed and the desired social ends sought to be achieved by freedom to contract another.

These remarks are made in order to express this court's dissent from language found in some of the cases which appears to deduce from the existence of divorce statutes evidence of a relaxation by the law speaking through popular legislative bodies, of its traditional concern that marriage be not discouraged and that, when entered into,

inducements to its termination be not favored. See *Daboll v. Moon, et al.*, 88 *Conn.* 387, 91 *A.* 646, *L. R. A.* 1915 *A.* 311, *Ann. Cas.* 1917 *B*, 164; *Baker v. Hickman, et al.*, 127 *Kan.* 340, 273 *P.* 480, 68 *A. L. R.* 743.

In the instant case testimony has been adduced which shows beyond question that Justis H. Davidson, the testator's only child, and his wife lived happily together. They have one child the granddaughter to whom the testator gave the legacy of ten thousand dollars in trust, before referred to. The testator lived with his son's family, and his life with them was unmarred by controversy or misunderstanding. No marital troubles whatever existed between the son and his wife. The home was characterized by peace, contentment and happiness. The will shows clearly that the testator desired his son to receive all the residue of his estate absolutely only if he should cease to co-habit with his wife. Why the testator should have desired to make that condition the *sine qua non* of the son's enjoyment of the gift, is a mystery. No one can explain it. It may have been the crotchety idea of an aging though testamentarily competent man. The severe exaction of the condition is the more apparent and its inducement to divorce the more persuasive, when it is observed that if the son persisted in honoring his marriage vows, not only would the gift not go to him, but it would also not go to his only child. If the son failed to comply with the condition, the legacy was directed to be paid on his death to five nieces, four of his deceased wife and one of his own. This ultimate disposition is a strange one, because it eliminates from the testator's regard the granddaughter for whom he had previously exhibited affection by giving her a ten thousand dollar legacy, and embraces in its beneficence five nieces, only one of whom was of his own kin, on whom he had made no previous bestowal except the insignificant one of a set of dishes to one of them, the niece Daisy Etta Jackson Myers.

Thus, if we look solely to the language of the will, it appears that the inducement to the son to rid himself of his wife, addressed its appeal to him on the score of two of the most influential motives that actuate men in their conduct viz., the motive, on the one hand, of self interest to acquire the property for himself and, on other, of love and affection for his offspring who would suffer financial loss if he failed to succumb to the inducement.

Not only does the evidence fail to disclose facts which can give this exacting condition a setting in justifying circumstance so as to make it reasonable and therefore properly to be excepted from the general rule; the evidence is forceful to the contrary. If we seek the intent which the testator had in mind in attaching the questioned condition to his gift, we must look first to his language and take it as meaning to accomplish exactly what its natural intendments indicate. That meaning is that the testator intended to prescribe as a condition to his son's enjoyment of his bounty that he should break up the happy situation of his married state. The evidence of the facts and circumstances surrounding the will and the persons concerned show that no ground whatever existed to supply a reasonable basis for the condition.

The trust, therefore, appears to be one whose sole purpose is to subserve the destruction of the marriage tie that bound the husband and wife together. That such is its purpose is obvious. When that is so, the purpose is condemned; the condition which seeks to accomplish it is violative of sound public policy and is therefore void. *Brizendine v. American Trust & Savings Bank*, 211 *Ala.* 694, 101 *So.* 618; *Conrad v. Long*, 33 *Mich.* 78; *Hawke v. Euyart*, 30 *Neb.* 149, 46 *N. W.* 422, 27 *Am. St. Rep.* 391; *O'Brien v. Barkley, et al.*, 78 *Hun* 609, 28 *N. Y. S.* 1049; *Cruger v. Phelps, et al.*, 21 *Misc.* 252, 47 *N. Y. S.* 61; *In re Haight's Will*, 51 *App. Div.* 310, 64 *N. Y. S.* 1029; *In re Hutchins' Estate*, 147 *Misc.* 462, 263 *N. Y. S.* 896; *Moores*

v. *Gwynne*, 33 *Ohio Cir. Ct. R.* 463; *Tripp v. Payne*, 339 *Ill.* 178, 171 *N. E.* 131; *Fleishman v. Bregel*, (*Md.*) 197 *A.* 593; *Dwyer v. Kuchler, et al.*, 116 *N. J. Eq.* 426, 174 *A.* 154; *Wren v. Bradley*, 2 *De Gex, J. & S.* 49, 64 *Eng. Reprint* 23; *Brown v. Peck*, 1 *Eden* 140, 28 *Eng. Reprint* 637.

In *Coe v. Hill*, 201 *Mass.* 15, 86 *N. E.* 949, the general rule was stated to be that "if the testator's purpose was to induce a future separation or divorce of his daughter from her husband, upon the happening of which the fund with accrued income would immediately become payable to her, the condition for this reason would be void." [page 950.] The case in which this enunciation of the principle was made, was of a trust for a daughter for life but to her absolutely "at the decease of her husband Frank E. Coe or upon her payment and legal separation from him." The Supreme Judicial Court of Massachusetts, while accepting the general principle as just stated, held nevertheless that the condition in the will before it was not within the principle. It took the view, based upon the words "legal separation," that the language of the condition respecting divorce referred to his daughter's "lawfully" securing a divorce, and that the testator was within the bounds of legal propriety in providing for the possible contingency of his daughter's lawful separation from her husband, in which event she should have absolute control over the property in place of its mere income and proceeds.

Now where the trust is for a married daughter, it must be conceded I think that there is more reason to accept the logic of the case of *Coe v. Hill, supra*, than where the trust is for a married son as here. This is because a wife is in such a state of dependence upon her husband and frequently so far under his control, that a gift of trust income to her during marriage and of the principal to be disposed of by her absolutely in case of divorce from her husband, obviously can muster more of argument in its support than can the case of a similar bequest in trust for a married

son. The baron, if I may use the terminology of the common law that implies a greater tribute to the superior force and strength of the male sex than does the more modern terminology, is supposed to stand in no need of protection from the aggressive acquisitiveness of the feme.

It must be admitted, however, that the principle of *Coe v. Hill, supra,* has been accepted and applied in a few cases where the trust was for a married son instead of for a daughter. *Daboll v. Moon, et al.,* 88 *Conn.* 387, 91 *A.* 646, *L. R. A.* 1915 *A,* 311, *Ann. Cas.* 1917*B,* 164. These two cases, *Coe v. Hill, supra,* and *Daboll v. Moon, et al., supra,* have both met with express disapproval in *Dwyer v. Kuchler, et al., supra,* and the former was understood by the Court of Appeals in Maryland (*Fleishman v. Bregel, supra*) to be based on the phrase "legal separation," which is not employed in the will now before the court.

In *Cowley v. Twombly,* 173 *Mass.* 393, 53 *N. E.* 886, 46 *L. R. A.* 164, it is said that the scheme of a trust similar to that now before the court "no more tended to induce the son improperly to procure a divorce between himself and his wife than to induce him to procure her death." [page 887.] To this I cannot agree. It amounts to saying that the urge to murder is no more irresistible than is the urge to divorce. Vice-Chancellor Bigelow, in *Dwyer v. Kuchler, et al., supra,* in New Jersey, characterized the argument expressed in the above quoted excerpt from *Cowley v. Twombly, supra,* as "weak".

*Coe v. Hill, supra,* and *Daboll v. Moon, et al., supra,* are out of line with the prevailing view not only in England but as well in America where the sanctity of marriage is perhaps less vigorously asserted and its safeguarding possibly less zealously protected.

There are cases where gifts are conditioned on separation or divorce prior to the testator's death which hold the condition good. But in such cases the condition can not

be thought of as calculated to influence the conduct of the beneficiary. The difference is plain between a condition which adjusts a gift to a fact situation as it exists at the testator's death, and one which is designed to induce the creation of a fact situation after the testator has died.

Cases also are to be found where a separation has already taken place or divorce proceedings are pending when the will was made. In such cases the condition has been found unobjectionable. This is because the courts have concluded that where the husband and wife have shown by their own antecedent conduct that the testator's conditional gift had had no inducing adverse effect on the marriage state, no disrupting consequences can be deduced from the condition.

The instant case is not of that sort. Here the husband and wife have lived in a state of contentment and happiness. From the evidence, there is not the slightest reason to suggest that the thought of divorce had ever so much as occurred to either as a fartherest fetched possibility, until the testator intruded the objectionable thought upon them by the severe exaction of the challenged condition which he annexed to his son's gift. I do not see how the condition can have any effect at all other than tend to separate the two. It does not help the case any to say that the testator who lived amicably with his son and daughter-in-law surely did not wish to drive them apart. We must take the condition as it is, regardless of any supposedly innocent attitude towards it of the testator, and consider what its natural and normal tendency is in its operation upon human nature as we know it. Its inducements are hostile to the continuance of the marriage relation. As such it is void.

The consequence is the gift to the son is absolute. Decree accordingly.