Grace Moore GRAVES, Elaine Farren, Eleanor Abbott, and Manvel Moore, Petitioners and Appellants,

v.

FIRST NATIONAL BANK IN GRAND FORKS as Testamentary Administrator of the Estate of Florence J. Henry, Deceased, First National Bank in Grand Forks as Trustee under the Last Will and Testament of Florence J. Henry, Deceased, which is dated June 29, 1951, the Methodist Church of Hoople, North Dakota, a religious corporation, Respondents.

No. 8239.

Supreme Court of North Dakota.

Nov. 29, 1965.

Letnes, Murray & Quigley, Grand Forks, for petitioners and appellants.

Stokes, Vaaler, Gillig & Warcup, Grand Forks, for respondent First National Bank in Grand Forks.

Shaft, Benson, Shaft & McConn, Grand Forks, for respondent The Methodist Church of Hoople.

ERICKSTAD, Judge.

This is an appeal from an order of the District Court of Grand Forks County affirming an order of the County Court of Grand Forks County which allowed the final report and account and granted the petition for distribution in the matter of the estate of Florence J. Henry, Deceased. The county court order provided for the distribution of the residue of the property in the estate to the First National Bank in Grand Forks as trustee under the trust provisions of the last will and testament of Florence J. Henry, Deceased.

The will of Florence J. Henry, after first providing for the payment of her debts and funeral expenses and for the purchase of a suitable monument, devised and bequeathed all the rest and residue of her estate to a trustee.

The paragraphs of the will pertinent to this lawsuit read as follows:

SEVENTH: I direct that the trusts established herein shall terminate as soon as my niece, Grace Moore, shall dissolve all legal marriage relationship or cohabitation with one Richard Graves, and after said relationship and cohabitation has terminated, I direct that my said trustee hold my said trust fund, as to both capital and income, for my said niece, Grace Moore, and that my said trustee will transfer said trust fund to my said niece as soon as conditions are fully met.

EIGHTH: In the event that my said niece, Grace Moore, does not dissolve all legal marriage relationship and cohabitation with the said Richard Graves prior to the time of her death, I direct that said trust shall terminate upon her decease and that my said trustee hold the trust fund as to both capital and income for the Methodist Church of Hoople, North Dakota, and direct that said fund be paid over to said Methodist Church of Hoople as soon thereafter as conditions permit and that said trust be terminated.

Following the admission of this will to probate and during the course of the administration of the estate, the defendant First National Bank in Grand Forks, as administrator with the will annexed, filed its final report and accounting and petitioned that the residue of the estate be set over to the bank as trustee, pursuant to the provisions of the will. The petitioners, Grace Moore Graves, Elaine Farren, Eleanor Abbott, and Manvel Moore, alleging to be the heirs at law of the decedent, objected to the granting of the administrator's petition asking for distribution of the estate

to the trustee. Their objection was based on the contention that paragraphs designated "Seventh" and "Eighth" of the will contained provisions contrary to public policy and that the provisions were thus void. They asked that the court declare a resulting trust in the named heirs at law.

The county court, however, granted the petition for distribution to the trustee, and it was from the order allowing the final report and accounting and granting the petition for distribution to the trustee, pursuant to the terms of the will, that the petitioners appealed to the district court. On appeal to the district court, the order of the county court was affirmed. The case was tried by the district court on the submission of briefs and on the record as contained in the county court.

As no testimony was taken in county court, the only thing before us is the will.

In granting the petition for distribution, the county court held that a trust was created by the terms of the will, requiring the granting of the petition for distribution of the residue of the estate to the trustee, and that construction of the trust provisions of the will was not within the jurisdiction of that court. The district court apparently adopted the same view in affirming the county court. Following this reasoning, neither of the courts reached the question of whether the trust provisions of the will were contrary to public policy and thus void.

Section 111 of our State Constitution, as it relates to the question before us, reads as follows:

The county court shall have exclusive original jurisdiction in probate and testamentary matters, the appointment of administrators and guardians, the settlement of accounts of executors, administrators and guardians, the sale of lands by executors, administrators and guardians, and such other probate jurisdiction as may be conferred by law; provided that whenever the voters of any county having a population of two thousand or over shall decide by a majority vote that they desire the jurisdiction of said court increased above that limited by this constitution, then said county court shall have concurrent jurisdiction with the district courts in all civil actions where the amount in controversy does not exceed one thousand dollars * * *.

In a 1912 decision this court held that the county court had no jurisdiction to determine adverse claims and quiet title to certain real property. The court therein said:

* * * [W]e are convinced that, in conferring upon county courts and justices of the peace concurrent jurisdiction with the district courts in certain cases, the framers of our Constitution had in mind merely those cases formerly designated as actions at law, as distinguished from suits in equity, and wherein is directly involved a sum in money or personal property not exceeding a stated amount. * * *

Mead v. First Nat'l Bank, 24 N.D. 12, 138 N.W. 365, at 366.

In a very recent decision of this court we said:

It is true that this court has held, in effect:

* * * * * *

(3) That county courts have no equitable jurisdiction. Muhlhauser v. Becker, 74 N.D. 103, 20 N.W.2d 353; In re Randall's Estate, 77 N.D. 69, 40 N.W.2d 446; State ex rel. City of Minot v. Gronna, 79 N.D. 673, 59 N.W. 2d 514.

In re Edinger's Estate, 136 N.W.2d 114 (N.D.1965), at 119.

In *Edinger's Estate* our court, in effect, held that the county court did not have jurisdiction to determine the validity of an antenuptial agreement.

The petitioners, in support of their contention that the county court has jurisdic-

tion to construe the trust provisions of the will, refer this court to the following:

Where the construction of the will is necessary to distribute the estate to the parties entitled thereto, it is clear the county court would be required to construe the will; but its jurisdiction is limited to what is necessary to administer the estate. * * *

In re Le Page's Trust, 67 N.D. 15, 269 N.W. 53, at 55.

A further reading of that opinion discloses the following additional language:

The county court has no jurisdiction over an action which is clearly one for equitable cognizance. It is not vested with equity powers. Mead v. First National Bank, etc., 24 N.D. 12, 138 N.W. 365. If, during the administration of the estate, it is necessary to determine contract rights or have the county court aided by an equitable action, resort is had to the district court for the determination of these matters. The relations between the two courts in this respect are set forth in Johnson v. Rutherford, 28 N.D. 87, 147 N.W. 390, and Honsinger v. Stewart et al., 34 N.D. 513, 159 N.W. 12. If the construction of a trust created by will be necessary to aid the administration of the estate, the jurisdiction of that action is in the district court, and in determining such matters the provisions of the will may be examined.

* * * * * *

In the administration of the estate the property is turned over to the trustee. The county court determines the property intrusted to him and its amount, as it determines the portions going to heirs and legatees. When this is done and the trust transferred, the estate of the decedent is no longer concerned. The trustee administers the trust according to the terms set forth in the will. A court of equity controls his acts. The jurisdiction in the administration of the trust is in the district court, which any person interested may invoke during the administration of the trust * * *.

In re Le Page's Trust, supra, 269 N.W. at 56–57.

In reversing the judgment of the district court, which had determined that the construction of the trust provisions of a will by the county court during the administration of an estate was binding upon the district court for the reason that no appeal had been taken from the said court order, our court said:

The judgment is reversed, and the district court will administer the trusts according to the provisions of the will without reference to the previous determination of the county court.

In re Le Page's Trust, supra, 269 N.W. at 58.

In a 1948 decision, after pointing out that Section 111 of the Constitution of North Dakota provides that county courts have exclusive original jurisdiction in probate and testamentary matters, our court said:

* * * Testamentary is defined by Webster's New International Dictionary, 2nd Ed., as "Of or pertaining to a will, or testament, or the administration of a will." In view of this definition, it seems almost too elementary to require statement, that matters pertaining to wills, and questions arising in the administration of wills, including a construction thereof are testamentary matters. And that where the only relief sought in an action is a construction of a will in aid of administration, it is exclusively a testamentary matter. The district court therefore did not have jurisdiction of the subject matter of this action. * * *

Bronson v. Johnson, 76 N.D. 122, 33 N.W.2d 819, at 820.

In the same decision this court said:

While there is considerable diversity of opinion among the courts of the United States as to the power of probate courts to construe wills, it is settled in this state that the power exists during the time an estate is in process of administration. Lowery v. Hawker, 22 N.D. 318, 133 N.W. 918, 37 L.R.A., N.S., 1143; Northwestern Trust Co. v. Getz, 67 N.D. 15, 269 N.W. 53. Since the adoption of the Declaratory Judgments Act (Chapter 32–23 N.D.R.C. 1943) the county court has also had jurisdiction, in a proceeding under that act, to render judgment construing the will of a testator whose estate is in the course of administration in the court. In re Estate of Henry J. Rusch, 62 N.D. 138, 241 N.W. 789. Provision is made for an immediate appeal in such a proceeding (Section 32–2307, N.D.R.C. 1943), and unless an appeal is perfected within the time allotted by statute the judgment entered in such proceeding becomes res adjudicata. In re Rusch's Estate supra.

Bronson v. Johnson, supra, 33 N.W.2d at 820.

In *Rusch* this court said:

* * * The petition in the instant case invokes the probate jurisdiction of the county court for the purpose of obtaining a declaratory judgment construing the will, to determine the existence and validity of a purported trust, * * *

In re Rusch's Estate, 62 N.D. 138, 241 N.W. 789, at 790.

Although the appeal in *Rusch* was dismissed by this court because the appeal from the county court construing the will was taken directly to the Supreme Court rather than to the district court, it is significant to note the meaning given that decision in *Bronson.*

In this instance the decisions of other states are of little help, as they are based on constitutional and statutory provisions of great variation. Many of the decisions which are rendered by the same courts draw distinctions which are exceedingly fine, if not incomprehensible. A resort to the rules of equity or of common law is also fruitless.

■ Our conclusions, from an analysis of our Constitution and statutes and of our decisions which have attempted to construe both, is that the county court has jurisdiction, not only to construe an ambiguous will in aid of administration of an estate, but to determine the validity of a part or all of a will when such a determination is necessary for the proper administration of the estate in county court. In the instant case the appellants contended that the trust provided for in the will was invalid, as imposing conditions contrary to public policy, and thus that the entire trust failed and that the estate should be set over to the heirs at law rather than to the trustee named in the will. In order to complete the administration of the estate, it was necessary, therefore, for the court to determine to whom the property of the estate should be distributed. If the trust was valid, the court could distribute the property to the trustee; but, on the other hand, if the trust was invalid, the court could not distribute the property to the trustee but would have the additional responsibility of determining the proper parties to whom the estate should be distributed. As it was necessary in the administration of the estate for the county court to determine to whom the estate should be distributed, the county court had jurisdiction to make this determination, and this determination is appealable.

■ As to the validity of the trust, we conclude that the condition in the will requiring Grace Moore Graves to divorce her husband and to terminate cohabitation with him as a condition precedent to receiving the trust fund is contrary to public policy and thus that the trust is void, and

that she is entitled to the residue of the estate free and clear of the trust.

This conclusion is supported by decisions rendered in the High Court of Chancery of England years ago. In an opinion written over two hundred years ago, that court found a condition in a will requiring that the testatrix's niece live apart from her husband in order to qualify for a bequest was *contra bonos mores* and void, and that the legacy should go to the niece without her complying with the condition. Brown v. Peck, 1 Eden 140, 28 Eng.Rep. 637 (Ch. 1758). To the same effect is a decision rendered nearly one hundred years later in the same court. Wren v. Bradley, 2 De G. & Sm. 49, 64 Eng.Rep. 23 (Ch. 1848).

The Court of Chancery of the State of Delaware reached the same conclusion in construing the following provisions of a will:

> * * * All the rest, residue and remainder of my estate, of whatsoever kind, and wheresoever the same may be situate at the time of my decease, I give, devise and bequeath unto. said Wilmington Trust Company, In Trust to invest the same, and pay the net income arising therefrom quarterly, or oftener, unto my son Justis H. Davidson for and during the term of his life, or as long as he remains the husband of his present wife Anna Marie Davidson. It is my will, and I do hereby order and direct that if the said Anna Marie Davidson should die during the lifetime of my said son, or if they shall be divorced, then and in either of said events I order and direct that said Trustee shall pay to my said son all of said rest, residue and remainder and all unpaid income thereon, and also all such sums of money as shall, under the provisions of this will, become a part of said rest, residue and remainder, freed and discharged of all trusts. If, however, payment of the same shall not be made to my said son during his lifetime, then upon his decease I direct said Trustee

to pay the same in equal parts or shares to Violet Sherwood Jackson Kinch, Daisey Etta Jackson Myers, Edna May Jackson Biers, Enda Alice Jackson Zerby, all nieces of my deceased wife, and my niece Mary Taylor Davidson Williams, to have and to hold the same to them and their respective Heirs and Assigns forever. * * *

Davidson v. Wilmington Trust Co., 23 Del.Ch. 1, 2 A.2d 285, at 286.

The court therein said:

> Thus, if we look solely to the language of the will, it appears that the inducement to the son to rid himself of his wife, addressed its appeal to him on the score of two of the most influential motives that actuate men in their conduct, viz., the motive, on the one hand, of self interest to acquire the property for himself and, on the other, of love and affection for his offspring who would suffer financial loss if he failed to succumb to the inducement.

> Not only does the evidence fail to disclose facts which can give this exacting condition a setting in justifying circumstance so as to make it reasonable and therefore properly to be excepted from the general rule; the evidence is forceful to the contrary. If we seek the intent which the testator had in mind in attaching the questioned condition to his gift, we must look first to his language and take it as meaning to accomplish exactly what its natural intendments indicate. That meaning is that the testator intended to prescribe as a condition to his son's enjoyment of his bounty that he should break up the happy situation of his married state. The evidence of the facts and circumstances surrounding the will and the persons concerned show that no ground whatever existed to supply a reasonable basis for the condition.

> The trust, therefore, appears to be one whose sole purpose is to subserve

the destruction of the marriage tie that bound the husband and wife together. That such is its purpose is obvious. When that is so, the purpose is condemned; the condition which seeks to accomplish it is violative of sound public policy and is therefore void. Brizendine v. American Trust & Savings Bank, 211 Ala. 694, 101 So. 618; Conrad v. Long, 33 Mich. 78; Hawke v. Euyart, 30 Neb. 149, 46 N.W. 422, 27 Am.St.Rep. 391; O'Brien v. Barkley et al., 78 Hun 609, 28 N.Y.S. 1049; Cruger v. Phelps et al., 21 Misc. 252, 47 N. Y.S. 61; In re Haight's Will, 51 App. Div. 310, 64 N.Y.S. 1029; In re Hutchins' Estate, 147 Misc. 462, 263 N.Y.S. 896; Moores v. Gwynne, 33 Ohio Cir. Ct.R. 463; Tripp v. Payne, 339 Ill. 178, 171 N.E. 131; Fleishman v. Bregel, [174] Md. [87], 197 A. 593; Dwyer v. Kuchler et al., 116 N.J.Eq. 426, 174 A. 154; Wren v. Bradley, 2 De Gex, J. & S. 49, 64 Eng. Reprint 23; Brown v. Peck, 1 Eden 140, 28 Eng. Reprint 637.

Davidson v. Wilmington Trust Co., supra, 2 A.2d at 287–288.

It is interesting to note that three of the leading cases cited by the respondents in this case, namely, Coe v. Hill, 201 Mass. 15, 86 N.E. 949; Cowley v. Twombly, 173 Mass. 393, 53 N.E. 886, 46 L.R.A. 164; and Daboll v. Moon, 88 Conn. 387, 91 A. 646, L.R.A. 1915A 311, Am. & Eng.Ann.Cas.1917B, 164, are analytically covered by the Delaware chancellor as follows:

In Coe v. Hill, 201 Mass. 15, 86 N. E. 949, the general rule was stated to be that "if the testator's purpose was to induce a future separation or divorce of his daughter from her husband, upon the happening of which the fund with accrued income would immediately become payable to her, the condition for this reason would be void." [page 950.] The case in which this enunciation of the principle was made, was of a trust for a daughter for life but to her absolutely "at the decease of her husband Frank E. Coe or upon her payment [permanent] and legal separation from him." The Supreme Judicial Court of Massachusetts, while accepting the general principle as just stated, held nevertheless that the condition in the will before it was not within the principle. It took the view, based upon the words "legal separation," that the language of the condition respecting divorce referred to his daughter's "lawfully" securing a divorce, and that the testator was within the bounds of legal propriety in providing for the possible contingency of his daughter's lawful separation from her husband, in which event she should have absolute control over the property in place of its mere income and proceeds.

Now where the trust is for a married daughter, it must be conceded I think that there is more reason to accept the logic of the case of Coe v. Hill, supra, than where the trust is for a married son as here. This is because a wife is in such a state of dependence upon her husband and frequently so far under his control, that a gift of trust income to her during marriage and of the principal to be disposed of by her absolutely in case of divorce from her husband, obviously can muster more of argument in its support than can the case of a similar bequest in trust for a married son. The baron, if I may use the terminology of the common law that implies a greater tribute to the superior force and strength of the male sex than does the more modern terminology, is supposed to stand in no need of protection from the aggressive acquisitiveness of the feme.

It must be admitted, however, that the principle of Coe v. Hill, supra, has been accepted and applied in a few cases where the trust was for a married son instead of for a daughter. Daboll v. Moon et al., 88 Conn. 387, 91 A. 646, L.R.A.1915A, 311, Ann.Cas.1917B, 164. These two cases, Coe v. Hill,

supra, and Daboll v. Moon et al., supra, have both met with express disapproval in Dwyer v. Kuchler et al., supra, and the former was understood by the Court of Appeals in Maryland (Fleishman v. Bregel, supra) to be based on the phrase "legal separation," which is not employed in the will now before the court.

In Cowley v. Twombly, 173 Mass. 393, 53 N.E. 886, 46 L.R.A. 164, it is said that the scheme of a trust similar to that now before the court "no more tended to induce the son improperly to procure a divorce between himself and his wife than to induce him to procure her death." [page 887.] To this I cannot agree. It amounts to saying that the urge to murder is no more irresistible than is the urge to divorce. Vice-Chancellor Bigelow, in Dwyer v. Kuchler et al., supra, in New Jersey, characterized the argument expressed in the above quoted excerpt from Cowley v. Twombly, supra, as "weak".

Coe v. Hill, supra, and Daboll v. Moon et al., supra, are out of line with the prevailing view not only in England but as well in America where the sanctity of marriage is perhaps less vigorously asserted and its safeguarding possibly less zealously protected.

Davidson v. Wilmington Trust Co., supra, 2 A.2d at 288–289.

The chancellor concluded as follows:

There are cases where gifts are conditioned on separation or divorce prior to the testator's death which hold the condition good. But in such cases the condition can not be thought of as calculated to influence the conduct of the beneficiary. The difference is plain between a condition which adjusts a gift to a fact situation as it exists at the testator's death, and one which is designed to induce the creation of a fact situation after the testator has died.

Cases also are to be found where a separation has already taken place or divorce proceedings are pending when the will was made. In such cases the condition has been found unobjectionable. This is because the courts have concluded that where the husband and wife have shown by their own antecedent conduct that the testator's conditional gift had had no inducing adverse effect on the marriage state, no disrupting consequences can be deduced from the condition.

The instant case is not of that sort. Here the husband and wife have lived in a state of contentment and happiness. From the evidence, there is not the slightest reason to suggest that the thought of divorce had ever so much as occurred to either as a fartherest fetched possibility, until the testator intruded the objectionable thought upon them by the severe exaction of the challenged condition which he annexed to his son's gift. I do not see how the condition can have any effect at all other then tend to separate the two. It does not help the case any to say that the testator who lived amicably with his son and daughter-in-law surely did not wish to drive them apart. We must take the condition as it is, regardless of any supposedly innocent attitude towards it of the testator, and consider what its natural and normal tendency is in its operation upon human nature as we know it. Its inducements are hostile to the continuance of the marriage relation. As such it is void.

The consequence is the gift to the son is absolute. Decree accordingly.

Davidson v. Wilmington Trust Co., supra, 2 A.2d at 289–290.

In Dwyer v. Kuchler, referred to by the chancellor in the decision just quoted, the chancery Court of New Jersey said:

This is a bill for the construction of the last will of Adel Keller, deceased.

Testatrix left two daughters, both married. The will gives the entire estate to the executor in trust to convert into money and to divide into two parts, one of which he is directed to pay to one of the daughters. The other half of the estate the executor is directed to deposit in a savings account for the following purposes: "The second part so set aside and so deposited, my said executor, as trustee, shall pay to my daughter, Anna Dwyer, only when and if she shall no longer be the legal wife of Hurlburt Dwyer, either because he shall have predeceased my said daughter, Anna Dwyer, or because of an absolute or qualified legal divorce between them." Then follows a gift over in the event Anna shall die before becoming entitled to her share of the estate.

Dwyer v. Kuchler, 116 N.J.Eq. 426, 174 A. 154, at 154.

The court concluded as follows:

* * * The great number of divorces proves that society is tolerant of marital misconduct and that a large gift conditioned on divorce may likely disrupt the family. If a provision in a will is such as is apt, in the ordinary course of events, to bring about wrong-doing and divorce, an intention to cause that effect should be attributed to the testator.

The condition annexed to the gift under consideration appears to have been calculated to lead to a divorce between complainant and her husband; it violates the policy of the state and is void; the gift to complainant is absolute.

Dwyer v. Kuchler, supra, 174 A. at 156.

In the instant case the will provided that the trust should terminate and that the trust funds should be transferred to the testatrix's niece when the niece had dissolved all legal marriage relationship and cohabitation with her husband. It further provided that in the event the niece did not dissolve all legal marriage relationship and cohabitation with her husband prior to the time of her death, the trust should terminate upon her death and the trust funds should be paid over to the Methodist Church of Hoople.

■ As the language of the will is clear and unambiguous, the intent of the testator must be determined from the language itself. It has been contended by some that, even though the language is clear and unambiguous, the intent of the testator must be determined in the light of surrounding circumstances. With this latter view we disagree. Here it is crystal clear that the condition imposed by the testatrix tends to encourage divorce and that such was the obvious intent of the testatrix. The condition is therefore contrary to public policy, which has as its object the preservation of the marital union. The gift therefore vests in the niece free and clear of the condition.

For the reasons stated, the order of the district court affirming the order of the county court is reversed and the case is remanded to the district court with instructions to enter judgment in accordance with this opinion.

STRUTZ and KNUDSON, JJ., concur.

TEIGEN, Judge (dissenting in part).

I dissent in part. I agree with syllabuses 1 and 2 of the majority opinion. I also agree that a provision in a will professing to set up a trust creating a motive for terminating the family relation of husband and wife may be held invalid as being contrary to public policy. However, this case is not ripe for that determination on the record before us. It is correctly stated in the majority opinion that " * * * no testimony was taken in county court, the only thing before us is the will." That there may be exceptions to the general rule is clearly shown by the cases cited in the majority opinion. I do not feel that we are at liberty to look solely to the language of the will to

make this very important determination. We have said many times that the primary consideration in construing a will is the intention of the testatrix. In re McQueen's Estate, 64 N.D. 31, 250 N.W. 95; In re Gray's Estate, 27 N.D. 417, 146 N.W. 722, L.R.A.1917A, 611; Crabtree v. Kelly, 65 N.D. 501, 260 N.W. 262; In re Glavkee's Estate, 76 N.D. 171, 34 N.W.2d 300; Hoellinger v. Molzhon, 77 N.D. 108, 41 N.W.2d 217, 19 A.L.R.2d 1147; Hull v. Rolfsrud, N.D., 65 N.W.2d 94.

Section 56–05–01, N.D.C.C., provides:

"A will is to be construed according to the intention of the testator. When his intention cannot have effect to its full extent it must have effect as far as possible."

We said In re Glavkee's Estate, supra:

"The sole purpose of the court in construing a will is to ascertain the intention of the testator as the same appears from a full and complete consideration of the will, when read in light of the surrounding circumstances. If that intent can be ascertained and is not violative of some rule of law which exists for the purpose of limiting the power of the testator to dispose of his property as he wishes, such intent must prevail."

In the case of Davidson v. Wilmington Trust Company, 23 Del.Ch. 1, 2 A.2d 285, upon which the majority opinion relies, the court considered evidence adduced and found:

"Not only does the evidence fail to disclose facts which can give this exacting condition a setting in justifying circumstance so as to make it reasonable and therefore properly to be excepted from the general rule; the evidence is forceful to the contrary. * * The evidence of the facts and circumstances surrounding the will and the persons concerned show that no ground whatever existed to supply a reasonable basis for the condition."

The court then concluded that the trust, therefore, appeared to be one whose sole purpose was to subserve the destruction of the marriage tie and that such purpose was obvious. The court concluded:

"* * * When that is so, the purpose is condemned; the condition which seeks to accomplish it is violative of sound public policy and is therefore void."

There is no evidence on which to substantiate such a finding in this case.

In the case of Hamilton v. Ferrall, 92 Cal.App.2d 277, 206 P.2d 663, the California court, holding a similar provision in a will valid, said:

"In the pending case the trial court adopted the view that the intention of the testator was to protect his daughter; that he knew that so long as she was married to Alex C. Hamilton she would be supported by him, but anticipating that the death or divorce of the husband would end his daughter's support from that source, the testator tried to provide for her better support in either of these contingencies."

The court also stated:

"* * * When by will he creates a trust a liberal construction should be given to its terms, it being the policy of the law to carry out the testator's intention so far as possible. * * * The language of the trust must admit of no other reasonable construction than that of illegality before a court will declare it invalid."

I note the careful language of Restatement of the Law, Trusts, Second, Section 62:

"A trust or provision in the terms of the trust *may* be held invalid on the ground that its enforcement would tend to the disruption of the family, by creating an improper motive for terminating the family relation.

"A provision in the terms of the trust for the payment of a sum of money to a beneficiary if he should procure a divorce or separation from his existing spouse, *may* be invalid." (Emphasis supplied.)

In the case relied upon in the majority opinion, Davidson v. Wilmington Trust Co., supra, the court was very careful to point out that the husband and wife had lived in a state of contentment and happiness for some time and from the evidence there was not the slightest reason to suggest that the thought of divorce had ever so much as occurred to either until the testator intruded the objectionable thought upon them. The court also acknowledged that there were cases where the condition may not be calculated to influence the conduct of the beneficiary, and stated:

" * * * The difference is plain between a condition which adjusts a gift to a fact situation as it exists at the testator's death, and one which is designed to induce the creation of a fact situation after the testator has died."

For the reasons aforesaid, I believe the judgment of the district court should be reversed and the case remanded to the district court with instructions to the county court to conduct a hearing at which evidence may be adduced in order that a knowledgeable determination may be made as to the validity of the challenged portions of the will.

I am also of the opinion that if the purported trust is void and where, as here, there is no other provision in the will expressing, either affirmatively or negatively, any contrary intention of the testatrix, the property should pass to her heirs at law under the laws of succession.

"The failure of a testamentary trust because of invalidity or otherwise does not render invalid other provisions of the will which are not affected by the trust. In the absence of a manifest intention or a provision in the will to the contrary, the property included in a trust will pass to the heir or next of kin of the testator, or to his residuary devisee or legatee, as the case may be, where the trust is invalid; * * *" 96 C.J.S. Wills § 1060.

BURKE, C. J., concurs in Judge TEIGEN'S dissent.